# CHARLESTON.

BUSKIRK *et al. v.* SANDERS *et al.*

Submitted June 9, 1911. Decided February 13, 1912.

1. INJUNCTION—*Subjects of Relief—Action at Law.*

   If any affirmative equitable relief is necessary to a full settlement of the controversy a court of equity will interfere, and entertain a suit for such relief, and enjoin the action at law. (p. 368).

2. SAME—*Nature of Remedy—Adequate Remedy at Law.*

   The mere existence of a legal remedy is not of itself sufficient ground for refusing relief in equity by injunction; nor does the existence or non-existence of a remedy at law afford a test as to the right to relief in equity. It must also appear that it is as practical and efficient to secure the ends of justice and its prompt administration as the remedy in equity. (p. 368).

70 W. Va.

3.    EQUITY—*Jurisdiction—Remedy at Law.*

   Though defendant has legal and equitable defenses he has the right as a general rule to go into a forum where he may have the benefit of all his defenses, and thereby be afforded complete protection against the claims of his adversary.  (p. 368).

4.    GUARDIAN AND WARD—*Custody of Estate—Authority to Sell.*

   If a guardian, of his own volition and without authority of the court, sever standing trees from his wards' lands, they are thereby converted into personal property; and his duty then, though wrongfully imposed, is not to suffer the timber to remain on the ground to rot and perish, but to sell it and account to his ward for the proceeds, and the purchaser thereof from the guardian, in good faith, and for a fair price, will acquire good title thereto.  (p. 368).

5.    CONTRIBUTION—*Liability for Wrongful Acts.*

   To deprive one of his right of recourse upon or contribution from one with whom he may have co-operated in the wrongful act of cutting timber from another's lands, such act must have been *malum in se.*  (p. 370).

6.    GUARDIAN AND WARD—*Custody and Care of Estate—Rights of Third Persons.*

   If timber trees be cut from a ward's land, without fraud and in good faith, and by permission of his guardian, no trespass is committed, and the infant, even after the guardianship has ceased, must look to the guardian for compensation for the timber taken. · (p. 371).

7.    SAME—*Accounting by Guardian—Credits—Necessaries.*

   A guardian, without previous order of the court, unless for necessaries, is not entitled to credit for disbursements out of the principal of his ward's estate.  Such necessaries may include necessary repairs on his ward's houses, fences, &c., but not permanent improvement   (p. 371).

8.    SUBROGATION—*Payment of Money for Another—Guardian and Ward.*

   If a guardian out of her own money, or money obtained from another, and for which she is liable, pay purchase money lien or other debts for which the land of her ward is liable, she or her estate, is entitled to be subrogated to the rights of the creditors whose debts have thus been discharged.  (p. 373).

9.    EQUITY—*Relief Granted.*

   With all parties or their legal representatives before it, a court of equity may in a proper case take a short cut in re-ad-

justing complicated and involved accounts, so as to do equity
between the parties.   (p. 373).

Appeal from Circuit Court, Wyoming County.

Bill in equity by U. B. Buskirk and another against Herbert
W. Sanders and others.   From a decree for defendants, plain-
tiffs appeal.

*Reversed and Rendered.*

*John M. McGrath, C. E. Pyle, James H. Gilmore,* and *Camp-
bell, Brown* and *Davis,* for appellants.

*J. A. Toler, M. F. Matheny,* and *Sanders & Crockett,* for
appellees.

MILLER, JUDGE:

The preliminary injunction awarded plaintiffs, restraining
defendants from prosecuting their suit at law against them to
recover the value of timber alleged to have been taken from their
land, was by the final decree on demurrer and motion of defend-
ants, wholly dissolved and the bill dismissed.

The grounds of demurrer relied on here, are:   First, that
plaintiffs had already submitted themselves to the jurisdiction
of the court in the suit at law; second, adequate remedy at
law; third, want of equity, and, fourth, other reasons to be as-
signed.

The theories of the four special counts of defendants' declara-
tion are as follows:   First, that plaintiffs themselves sold the
timber trees to defendants, and that the latter cut, and carried
them away, and in consideration thereof promised to pay plain-
tiffs therefor the sum of $25,000.00:   Second, that plaintiffs had
before that time, at the special instance and request of defend-
ants, bargained and sold the timber trees to defendants, who had
cut and carried them away, and in consideration thereof had
promised to pay plaintiffs what they were reasonably worth:
Third, that plaintiffs being the owners of a tract of 3,000 acres,
on which said timber trees stood, defendants had cut and car-
ried them away, whereby they had become indebted to plain-
tiffs the value thereof, alleged to be $25,000.00:   Fourth, that
plaintiffs had inherited said land from their father, J. O. San-
ders, deceased, and that defendants had entered into a contract

with their mother, the administratrix of their father's estate, whereby they purchased from her, with notice of her want of authority, said timber trees, and that pursuant thereto they had cut down, removed and sold said trees in the market, but took no title thereto, well knowing the same belonged to plaintiffs, whereby they became indebted to plaintiffs in the sum of $25,000.00, the value thereof, and which they thereafter in consideration of the premises faithfully promised to pay plaintiffs.

Appellants admit that prior to filing their bill they appeared to said action at law, demurred to the declaration, and took leave to file special pleas.

Besides the prayer for an injunction, there is a prayer that plaintiffs be adjudged not liable to pay a second time for said timber; that it be ascertained, by a commissioner, what disposition was made by Ida Sanders of the money paid her therefor, with all the facts in relation thereto; that it be also adjudged that all expenditures for repairing the dwelling house, fences, barns and other improvements on the land descended to defendants, were for their benefit; that if plaintiffs, who in good faith, and without notice that said timber had been taken from defendants' lands, purchased the same, and paid full market price therefor, should in any event be again held liable therefor, the estate of said Ida Sanders be decreed to refund to them the amount so paid, and that defendants, her wards, and as distributees of her estate, be charged in equity, when ascertained, with the balance on settlement of her guardianship accounts, and with the amount received by them as distributees of her estate, and with the amount expended by her, out of her own funds, in excess of assets, in paying debts in repairing and improving their lands, and that their liabilities thereby incurred to her estate be offset against the liability, if any, of plaintiffs to them.

Defendants have apparently abandoned the first point of their demurrer, though fully argued, with citations of authorities, in the brief of appellants' counsel, it is not referred to by counsel for appellees or discussed by them in their brief. We will not further notice it therefore.

The material facts well pleaded in the bill and taken for

true on demurrer, present the following propositions relied on
as a basis for equitable relief:

First, that the timber was not cut or removed by plaintiffs, but
by defendants' mother and guardian, having, by virtue of section
7, chapter 82, Code 1906, the care and management of their
estate, real and personal, and who after severing said timber sold
and delivered the same to plaintiffs, at the place of delivery, and
that they in good faith paid her for same, the full market price
therefor, and that she and not they, if any one, should be rendered liable to defendants therefor, and for any waste committed; that if this, a legal defense, be not sustained, they, nevertheless, have complete equitable defenses not available at law,
which they are entitled to interpose, namely, that should they,
for any reason, be rendered liable to defendants for said timber,
their mother and guardian would become liable to them for
the amount recovered; and as defendants, as alleged, would be
liable to her estate on settlement of her guardianship accounts,
for moneys paid out for necessary repairs and improvements on
their lands, and for their maintenance and education, in a large
sum; and also in settlement of her administration accounts, as
administratrix of their father's estate, for money paid out beyond
assets, to discharge a lien on their lands for purchase money,
and to pay borrowed money and other debts for which his estate was liable, alleged to be about $1,800.00; and as they also
as distributees of her estate had received about $3,700.00, and
could be required to refund the same, to pay debts, their claim
against appellants, if valid, should in equity be offset by her
liability to them.

The first inquiry is, has equity jurisdiction where defendant
has a legal and also an equitable defense? Little need be said
in affirmance of this proposition. Plaintiffs might fail in their
legal remedy, and yet if their several grounds of equitable relief
be good, they should prevail. To make these equitable defenses
available settlements of the guardianship, and administration
accounts of defendants' mother, would be necessary, involving
an ascertainment of the value of any repairs, or improvements,
if allowable, on the lands, and the amount expended by her in
their maintenance and education, and which could not be done
on the trial of the action at law.

Though one have a defense at law, yet if it be doubtful, and he also have equitable defenses, and his legal defense would not be as adequate and certain as in a court of equity, he may go into equity, at once, without awaiting the result of the lawsuit, or even being compelled to confess judgment at law. *Gas Co. v. Window Glass Co.*, 63 W. Va. 266; *Eastern Oil Co. v. Coulehan*, 65 W. Va. 531. "If any affirmative equitable relief is necessary to a full settlement of the controversy, and to a .complete protection of defendant's rights, a court of equity will interfere, and entertain a suit for such relief, and enjoin the action at law." 4 Pom. Eq. Jur., section 1363, page 2706; 22 Cyc. 799, 801, and cases cited; *Knott* v. *Seamands,* 25 W. Va. 99, 105; *Dudley* v. *Miner's Ex'or,* 93 Va. 408, 25 S. E. 100, 101; High on Injunctions, (4th Ed.) sections 30, 66. The mere existence of a legal remedy, says Mr. High, section 30, "is not in itself sufficient ground for refusing relief in equity by injunction; nor does the existence or non-existence of a remedy at law afford a test as to the right to relief in equity. *    *.    *    It must also appear *    *    *    that it is as practical and efficient to secure the ends of justice, and its proper and prompt administration as is the remedy in equity."

Assuming the law to be that the application of these principles to a particular case must depend upon the character of the case as disclosed by the pleadings, we have here facts alleged which on plaintiffs' theory may constitute a complete defense to the action at law; but they also allege facts which on their theory, if their defense at law should fail, would, nevertheless, in equity constitute good defenses, not available on the law side of the court. We understand the authorities to hold that a defendant has the right to the benefit of all his defenses, and that when some are legal, and others equitable, the one at law, which in the exigencies of a trial might fail, can not be said to be as adequate and certain, and as complete a protection to defendants' rights, as all combined, and in a forum where he may have the benefit of all. Wherefore he may then go into equity for a vindication of his right.

The first proposition of appellants that defendants' guardian, if any one, is liable to them for the timber taken, is not conceded, but controverted by appellees. They contend that stand-

ing timber being real estate cannot be severed or sold by a guard-
ian, without authority of a court, and though severed in fact,
it still remains real estate, and that purchasers from a guardian
acquire no title, and are liable to the owners of the land. That
standing timber is real estate, and that a guardian cannot, gen-
erally, lawfully convert his ward's realty into personalty, or per-
sonalty into realty, or sell and convey it to a purchaser, by deed
or otherwise, without previous sanction by the court, are propo-
sitions not controverted by appellants' counsel. But such is
not the case presented by the bill, and the authorities cited and
relied on by appellees' counsel are for the most part inapplicable.

The case here is one where a guardian, in lawful control and
management of the infants' lands, has in fact and of her own
volition severed the timber, and after so converting it into per-
sonalty, has sold it in the market. Having done so, the duty,
though wrongfully imposed, is not to let it rot and perish on
the ground, but to sell it, accounting for the proceeds to her
wards. This seems a self evident proposition. No other course
would be open to her. The infants could not sell it or pass good
title. She could.

That timber severed from land becomes personalty is fully sus-
tained by our decisions. *Null* v. *Elliott,* 52 W. Va. 229; *Buskirk
Bros.* v. *Peck,* 57 W. Va. 360. That a guardian may in good
faith and free from fraud lawfully sell his ward's personal
property, particularly when perishable and liable to waste, and
give the purchasers good title, is too well settled to admit of
controversy. *Maclay* v. *Equitable Life Assurance Society,* 152
U. S. 499; 21 Cyc. 146; *Windon* v. *Stewart,* 43 W. Va. 711;
Woerner Am. Law Guard. 179; *Hunter* v. *Lawrence,* 11 Grat.
130. In 2 Barton's Ch. Pr. 753, it is said: "He may sell the
whole or any part of his ward's personal property, whether it is
perishable or not, and may pass a good title to it unless the
sale be fraudulent, and the purchaser collude with the guardian
by co-operating in the fraud." The bill negatives all fraud or
collusion with the guardian in severance and sale of the timber.
After she cut the timber and converted into personalty, as coun-
sel for appellees in their brief believe in good faith, whose
property was it? Was it not the wards' personal property?
And who besides the guardian had lawful authority to sell it

and preserve, or lawfully dispose of the proceeds? Certainly no one but the guardian could do so.

But assuming that the foregoing defense, good at law, we may say, should fail for any reason, what about the equitable defenses? Suppose, for example, that it should turn out on the trial, on the theory of the fourth special count in defendants' declaration, that appellants purchased from the administratrix, or the guardian, the standing timber in place, and thereby became parties to a wrongful act, having paid her the purchase price, would not she or her estate, be liable individually to repay or refund the money paid her by appellants? Appellees answer no; on the principle announced in *Asberry's Admr.* v. *Asberry,* 33 Grat. 463, that one "who concerts or unites with a fiduciary in a mis-application of the trust funds, or in any other act contrary to the duty of the fiduciary, becomes a *particeps criminis,* and will be held liable accordingly." That case involved the misapplication by the guardian of his ward's funds in payment of his individual debt, and the principle was there clearly applicable. *Boisseau* v. *Boisseau,* 79 Va. 73, 52 Am. Rep. 616, involved the investment by a guardian of the ward's money in real estate and the reservation by the vendor of lien for the unpaid balance, rendering the property purchased liable to be sold for the payment thereof, which was the purpose of that suit, and involving the loss of the ward's entire estate. The purchase of the real estate was held a breach of trust, and the vendor a participant therein, and liable to refund the money of the infant, quite a different case from the case in hand, and to which the principle was clearly applicable.

The principle, which we think is applicable here, is, that to deprive appellants of recourse, upon the estate of Mrs. Sanders, or contribution by her, she being at least equally liable for the alleged wrongful act, their act in purchasing and severing the timber must have been *malum in se.* 6 Pomeroy Eq. Jur., section 916; *Thweatt* v. *Jones,* 1 Rand. 328. We see nothing on the face of the bill, or in the nature of the transaction between appellants and the administratrix or guardian, justifying the theory of fraud or bad faith, to deprive them of the benefits of the equitable defenses interposed, if they are otherwise well founded.

These defenses, moreover, do not stand alone on the general rule applicable to persons jointly responsible for the wrongful act. The alleged wrongful act here consists in an alleged trespass or waste committed on infants' lands. An old Virginia case, *Truss* v. *Old,* 6 Rand. 566, cited and differentiated in *McDodrill* v. *Pardee & Curlin Lumber Co.* ,40 W. Va. 564, says: "Possession is indispensably necessary to support trespass *quare clausum fregit.* * * * Guardians in socage, and testamentary guardians, (although they have no beneficial interest, yet) have a legal interest, and the possession of the ward's land during the guardianship. If, therefore, a person trespass on the lands of an infant and cut and carry away his trees, without license of the guardian, the ward cannot maintain trespass, but the guardian may, and must account to the ward for the damages recovered. * * * * If the trees are cut and carried away by permission of the guardian, no trespass is committed, and the infant even after the guardianship has ceased, cannot maintain trespass for the act. The wrong must be compensated to the ward by the guardian."

In the *McDodrill Case* this Court held that the doctrine of the *Truss Case* did not apply to guardians by nature, but only to guardians appointed, who as in this case had given bond, &c. It should apply in full force, we think, where as in this state, the statute gives the guardian control and management of the wards' real estate; and we agree with appellants' counsel that though defendants' action at law is in *assumpsit* and not, as in *Truss* v. *Old,* in trespass, the plaintiffs who may waive the tort and sue in *assumpsit* must be those who could have maintained trespass. Of course this argument relates more particularly to the legal defense interposed; but it is also applicable to the position of appellees' counsel, based on the theory of *joint tort feasors.*

If *Truss* v. *Old* is good law appellants committed no trespass on the appellees' lands, and are not joint tort feasors, but are in a position to hold her and her estate liable for any liability to them on the theory that her act was unauthorized and they liable to appellees for the timber taken.

The question remains, are appellants' equitable defenses well founded? If upon the rules and principles already enun-

ciated, appellants who have paid the guardian of the appellees in full for the timber taken, she and her estate would certainly be liable to appellants, if they should for any reason be held liable to the appellees for the timber purchased. Another proposition equally fundamental is, that if the guardian received the purchase money for the timber, as guardian, she would be bound to account for it in settlement with her wards, and would be entitled to credit, in equity at least, for any disbursements legally made. Appellees contend that without previous authority, as provided by section 8, chapter 82, Code 1906, she would be entitled to no credit for disbursements out of the principal of her wards' estate. We think this not a well founded proposition. The statute we think so far as it relates to disbursements by guardians for necessaries must be construed to be permissive, on the principles of *Maclay* v. *Equitable Society, supra,* construing a statute in Mississippi, and as only providing a mode by which the guardian may obtain in advance judicial approval of his act, instead of leaving the question open for dispute at a future day. At common law expenditures made by a guardian in good faith, and for the benefit of the ward, would be confirmed by the court. This rule is recognized in *Myers* v. *Myers,* 47 W. Va. 488, and *Campbell* v. *O'Neill,* 69 W. Va. 459, 72 S. E. 732, 736. Necessaries within this principle, we think, would include necessary repairs to a dwelling house, in order to make it tenantable, necessary repairs to fences, necessary food and clothing, and a common school education. Woerner Am. Law Gaurd. 202; 2 Barton's Ch. Pr. 156. We do not think under the principles of our decisions, a guardian without previous authority would be entitled to credit for disbursements for permanent improvements of the wards' real estate, though in *Jackson* v. *Jackson,* 1 Grat. 143, decided before our present statute, it would seem he might even have been entitled to credit for such expenditures, if obviously for the wards' benefit. Under our decisions expenditures so made without court authority must fall within the rule of necessaries. Clearly, therefore, appellees would not be entitled to charge their guardian with the money received from appellants, without at the same time giving her credit for disbursements out of that fund for such necessaries; and appellants would certainly be entitled in equity to

offset so much of their money as she has expended in this way, out of their money, against any legal liability to appellees for the timber taken.

A still stronger ground of equitable relief is, that a purchase money lien on defendants' lands and debts for borrowed money and other debts of the estate of J. O. Sanders, were paid off and discharged by the guardian. This land was liable for these debts. If Mrs. Sanders, either as administratrix or guardian, discharged them out of her own money, or out of money paid her by appellants, not being a volunteer but having a duty in relation to such debts, she would be entitled to subrogation to the rights of creditors, and her creditors, she being dead, would now be entitled to have her claims against her husband's estate, and against her wards, treated as assets subject to their debts. 37 Cyc. 444 and notes. If out of the money obtained from appellants, as the bill charges, the guardian paid these debts, and appellees or the estate of their father became liable by subrogation to her estate, it would be most inequitable to hold that the several liabilities should not be adjusted on principles of equity to relieve appellants.

Still another, and perhaps a stronger basis of equitable relief is, that appellees, as distributees of their mother's estate, have received large sums of money. If Mrs. Sanders should be held liable to appellants for the purchase money paid her for the timber, her heirs and distributees, to the extent of personal assets received, would be liable either directly or through her administrator, who is now before the court, to refund the money or property received in distribution, to pay that liability to appellants, and this being so, a court of equity with all parties before it ought to take the short cut by offsetting the appellants' claim against their guardian's estate, against their claim against appellants, for the timber taken from their land. On the subject of compelling legatees and distributees to refund where no bond has been taken, see 5 Cyc. Dig. Va. & W. Va. Rep. 631, 635; 2 Lomax on Ex'ors. 175.

For these reasons we are of opinion to reverse the decree below dismissing the bill on demurrer, and to enter here the decree which we think the court below should have pronounced, overruling the demurrer, and giving appellees a reasonable time within which to answer the bill.     *Reversed and Rendered.*