# CHARLESTON.

## Cox v. United States Coal & Coke Co.

### Submitted April 17, 1917.   Decided April 24, 1917.

1. **Master and Servant**—*Remedy of Injured Employe—Workmen's Compensation Act.*

   An employee, not himself at fault, who is injured while off duty, by the negligence of his employer or of another employee in the course of his employment, is not entitled to be compensated out of the workmen's compensation fund, but has a right of action against his employer as at common law.  (p. 300).

2. **Same**—*Injury to Employee—Workmen's Compensation Act.*

   The term *employee,* as used in section 22 of the Workmen's Compensation Act, properly interpreted, does not include an employee who happens to be injured, while off duty, by the negligence of another employee in the course of his employment.  (p. 301).

3. **Negligence**—*Pedestrians—Duty of Coal Company.*

   A coal company, knowing that pedestrians frequently use a railway company's main line nearby its coal tipple located on a side track ten or twelve feet above the main line, whose custom is to pick the slate out of the coal as it is being loaded in the cars at the tipple and cast it in the direction of the railroad, is bound to use reasonable care to avoid injury to such pedestrians.  (p. 301).

4. **Same**—*Pedestrians—Care Required.*

   Persons so using a railroad, whether with or without permission of the railway company, do not thereby become trespassers as to such coal company so as to relieve it of the duty to use reasonable care to avoid injuring them.  (p. 301).

Error to Circuit Court, McDowell County.

Action by Henry Cox against the United States Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Anderson, Strother, Hughes & Curd,* for plaintiff in error.

*Joseph M. Crockett, A. G. Fox* and *Sanders & Crockett,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff, Henry Cox, recovered a judgment for $15,000 against the defendant, United States Coal & Coke Company, a corporation, in an action for personal injury, and it has brought the case here on writ of error. Defendant's demurrer to the declaration was overruled. It then pleaded the general issue and tendered two special pleas, averring, in substance, that it was an employer within the meaning of the act of the legislature known as the Workmen's Compensation Act; that, at the time of his injury and for sometime prior thereto, plaintiff was one of its regular employees within the meaning of said act; and that defendant had, in all respects, complied with the provisions of said act and was entitled to all its benefits. Issues were joined and the case was tried by a jury, resulting in a verdict and judgment for plaintiff.

The facts and circumstances surrounding plaintiff's injury, as well as the cause thereof, are not disputed. Defendant was engaged in mining coal and manufacturing coke and employed several thousand men. It operated three mines on Tug River in McDowell county. About the last of January, 1916, plaintiff was employed as a day laborer to work in defendant's mine No. 11, and had worked four or five days next prior to the 5th of February, on which day he was injured. He did not go to work on that day, and his explanation for not doing so is, that he got up late and did not get his breakfast in time to get to the mine opening by seven o'clock and thought it was a rule of the coal company not to admit an employee into the mine, to work on the day

shift, if he failed to be at the entrance at that hour. His
boarding and lodging place was at defendant's mine No.
10, about a quarter of a mile below mine No. 11. On that.
day plaintiff and a companion by the name of Extine went
up the river to mine No. 4, or Thorpe, which was about a
mile from No. 11, to buy a cap. On the way up they stopped
at mine No. 11, to inform the mine foreman, as plaintiff
swears, why he had not gone to work that day. In going
by mine No. 11, they followed a private road leading along the
hillside and on the upper side of the tipple at No. 11. The
evidence is conflicting as to whether they stopped at No. 11
in the morning or in the afternoon, but the way they went
and the fact that they did stop are not disputed, and the
time of day is not material. On their return from Thorpe
to mine No. 10 they were walking along the main line of the
Norfolk & Western Railway, and just as they reached a
point opposite defendant's tipple at No. 11 plaintiff was
struck on the head by a piece of "bone" thrown from a rail-
road car standing on defendant's siding under the tipple.
The piece of bone weighed six or seven pounds and was
thrown a distance of thirty-five or forty feet by George
Hampton an employee engaged in picking slate and "bone"
out of the coal as it was being loaded. Plaintiff's skull was
crushed and he was knocked to the ground insensible by the
blow. Defendant's switch or siding, at that point is elevated
about ten or twelve feet above the level of the main line, and
the distance between the two tracks, from center to center,
is thirty-five feet and on the slope forty-five feet. George
Hampton admits he threw the piece of bone that struck plain-
tiff, but swears he did not see him and did not know that he
was hurt until Extine called to him to come down and help
get him up. A public county road led down the river on the
opposite side from the railroad, from Thorpe to No. 10, but
the road was generally muddy in winter, and it is proven
that pedestrians used the railroad tracks as a walkway in-
stead of the county road, many persons traveling over it
by tipple No. 11. Defendant knew that fact. Howard N.
Eavenson, its chief engineer since 1902, admits he knew it.
But plaintiff had not been employed long at the mine, and

it is proven that this was the first time he so used the railroad track. The tipple stood partly on defendant's own land and partly on the railway company's right of way. Defendant's custom was, and had been for a number of years previous to the accident, to cast the slate and bone over the edge of the cars, between the switch and the main line, let it slide down the bank into the railroad ditch and, before it would accumulate in such quantity as to interfere with the tracks, to shovel it across the main line down the river bank. Plaintiff and Extine were walking along the track between the rails, not looking in the direction of the tipple, when plaintiff was struck. It is suggested that George Hampton's act in throwing the bone was malicious, but there is no evidence to warrant such an inference. His own testimony is not contradicted, and he says he did not see anyone at the time, and never saw or knew plaintiff before that occasion. Why he threw so heavy a piece of bone so far as he did is not explained. It may be that he attempted to throw it over the main line track to prevent it from rolling down the slope and possibly lodging on the track, and it is very probable that, if it had not struck plaintiff, it would have fallen to the ground beyond the tracks. Plaintiff was taken to the hospital and his wound dressed. He was able to go about in sixteen days, but his injury was severe and there is evidence tending to prove that it is permanent. He testified that he had not been able, since he was hurt, to perform much manual labor, that when he tried to do any work that required him to stoop over, he suffered from headaches, that whether he worked or not he suffered as much as four or five days a week from aches and pains in the head. The fracture of his skull was about three quarters of an inch in diameter and leaves the brain unprotected at that point except by the scalp. At the time of the trial, eight or nine months after the accident, plaintiff was still affected with partial paralysis and aphasia, resulting from his injury.

At the conclusion of the evidence the court gave the following instruction at the request of plaintiff: ''The court instructs the jury that, it appearing from the evidence in this case that the plaintiff was not in the service of the defendant

company on the 5th day of February, 1916, the date of the alleged injury of which he complains, and at the time of the alleged injury, that the act known as the workmen's compensation act cannot be relied upon by the defendant as a defense to this action.''

Defendant objected and excepted to the giving of this instruction, and asked for eight other instructions on its behalf all of which, except its No. 2, the court refused to give, and it again excepted. Its No. 5 is the antithesis of plaintiff's No. 1, and is to the effect that defendant was entitled to the protection of the workmen's compensation act and plaintiff could not recover. If it was proper to give plaintiff's No. 1, of course it was not error to refuse defendant's No. 5. Thus is presented the clear cut legal question, whether, under the undisputed facts and circumstances of this case, defendant was shielded from liability to plaintiff by the workmen's compensation act? That defendant is an employer, within the meaning of that act, and had complied with all of its provisions are admitted, and its counsel insist that, although plaintiff's injury was not received in the course of, and did not result from his employment, still he was defendant's employee, and section 22 of the act relieve it from liability, the relation of employer and employee not having been severed at the time of the injury. There is no evidence whether it was plaintiff's purpose to return to work on the next work day if he had not been hurt. But for the purpose of deciding the question presented it may be assumed that such was his purpose. Section 22 of the act is as follows:

''Any employer subject to this act who shall elect to pay into the workmen's compensation fund the premiums provided by this act, shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after such election and during any period in which such employer shall not be in default in the payment of such premiums; *provided,* the injured employee has remained in his service with notice that his employer has elected to pay into the workmen's compensation fund the premiums provided by this act. The con-

tinuation in the service of such employer with such notice shall be deemed a waiver by the employee and by the parents of any minor employee of the right of action as aforesaid, which the employee or his or her parents would otherwise have.''

And section 9 of the act defines the terms, employer and employee, the latter as follows: ''All persons in the service of employers as herein defined, and employed by them for the purpose of carrying on the industry or business in which they are engaged, (casual employment excepted), are employees within the meaning of this act, and subject to the provisions hereof.'' Then follows a description of who are not employees, within the meaning of the act, which has no bearing on the question here presented. One of the primary purposes of the workmen's compensation act was to provide pecuniary protection to employees and their dependent families, in case of their personal injury, received in the course of and resulting from their employment. It matters not whether the injury is the result of a mere accident, or is occasioned by a negligent act of the employer which would render him liable at common law, the only essential condition entitling the injured employee to be compensated out of the fund being that the injury must occur in the course of and result from his employment. Another very important purpose the legislature had in view in passing the act was to relieve the employer from personal liability to the injured employee in those cases wherein he would have been liable at the common law on the ground of negligence in the performance of his duty to his servant. It is clear plaintiff was not injured in the course of his employment, and, therefore, he has no right to demand compensation out of the workmen's compensation fund. But it was surely not the purpose of the legislature to relieve an employer from liability for a negligent act causing injury to one of his employees who happens not at that particular moment to be engaged in performing labor for him. The construction of the statute contended for would destroy a long existing common law right without giving anything in return therefor. It would be both unwise in policy, as tending to promote carelessness among employ-

ers, and repugnant to justice. Whether plaintiff was or was not, in a general sense, defendant's employee at the time he received his injury, he was not an employee, within the meaning of section 22 of the workmen's compensation act, relieving an employer from liability to respond in damages to his employee for an injury, "however occurring." The term, as there used, means an employee who is injured in the course of, and as a result of his employment, and one who, under the common law principles of master and servant, could have maintained an action against his employer. It is not contended that plaintiff's injury was received under such circumstances as would have entitled him to compensation under the workmen's compensation act. In fact, under previous holdings of this court, he was not so entitled. *DeConstantine* v. *Public Service Commission,* 75 W. Va. 32. Immediately after the accident occurred defendant reported the case to the compensation commissioner, and was informed by him that the facts stated did not present a proper case for compensation out of the fund. Having been injured by defendant, not in the course of his employment, plaintiff's case stands as if the relation of employer and employee never at any time had existed between them. If defendant would have been liable for an injury, inflicted on a stranger under similar circumstances, then it must be held to be liable to plaintiff.

It is insisted that plaintiff was trespassing on the Norfolk & Western Railway's tracks, and defendant owed him no duty to lookout for him, and is liable only in case it wilfully and wantonly injured him. There is no proof that the act was wanton and we do not think the fact that plaintiff may have been a trespasser, as between himself and the railway company, can affect defendant's liability. That defense would only apply in case plaintiff was a trespasser upon the property of defendant. "To relieve one from liability on the ground that the injured person is a trespasser, the premises must belong to the person whose negligence is complained of." 29 Cyc. 443. On the other hand, we read from the same book: "One who uses his premises so negligently as to injure a person on adjoining premises is liable for injury

sustained. \* \* \* \* And the rule has been held to apply, although the person injured is on the adjoining premises merely as a guest or as a trespasser." 29 Cyc. 459. See also *Defiance Water Co.* v. *Olinger,* 32 L. R. A. 736; *Wilson* v. *American Bridge Co.,* 77 N. Y. S. 820; and *Commonwealth Electric Co.* v. *Melville,* 210 Ill. 70.

In throwing the lump of "bone" upon the railroad track defendant was likewise a trespasser. It can not rely on plaintiff's trespass in defense of its own wrong. *Norris* v. *Litchfield,* 35 N. H. 277, 69 Am. Dec. 546. If the lump of bone had been cast upon a track-walker or section-hand of the railroad company who might have happened to be passing at that instant, in pursuit of his regular employment, and he had been injured as plaintiff was, no one would question defendant's liability for an instant. Is not its liability in the present case similar, and must it not be determined by the same principles? That defendant, through its chief engineer and servants, knew that pedestrians frequently passed up and down the railroad track, is fully proven. It, therefore, must have known that heavy lumps of slate and bone thrown from the car at the tipple, down upon the railroad track, were liable to strike and injure some person. Therefore it was its duty to keep a reasonable lookout to avoid injury to persons who happened to be passing by on the track. Although it had a license to occupy a portion of the railway company's right of way with its switch and tipple, it does not appear that it had a right to throw material upon the main line. It is held, even where a way has been much used by the public without express permission, over a defendant's own premises, he is, nevertheless, liable if he obstructs the way in such a manner as to cause injury to a person in the nighttime, who has no knowledge of the presence of the obstruction. *DeTard* v. *Heim,* 62 Kan. 188; and *Rooney* v. *Woolworth,* 78 Conn. 167.

The defense of plaintiff's contributory negligence in failing to observe the work that was going on at the tipple while he was walking on the railroad track, was properly submitted to the jury by defendant's instruction No. 2 which was given. Its No. 1 is a peremptory instruction, and all the

others not given, except No. 4 which is the same in effect as No. 2, contravene the principles herein decided.

In view of the nature of plaintiff's injury and the permanent effect the evidence tends to prove it has had on his capacity to work, we can not say the verdict is excessive, and the judgment is affirmed.

*Affirmed.*