MAE L. HAYNES

*v.*

THE CITY OF NITRO, *etc., Appellant*; PENN CENTRAL

TRANSPORTATION CO., *etc., et al., Appellees*

(No. 13624)

Decided December 20, 1977.

Rehearing Denied February 6, 1978.

*Betty L. Caplan* for appellant.

*Kay, Casto & Chaney, Robert H. C. Kay and George S. Sharp* for appellees.

HARSHBARGER, JUSTICE:

On January 19, 1972 Mae Haynes was a passenger in an automobile operated by her daughter-in-law, Linda K. Workman, who drove it off Wilson Street in the City of Nitro, Kanawha County, and onto Penn Central Transportation Company's tracks that were more than a foot below street level.

Wilson Street was a public street, at least to the point where it entered the Penn Central right-of-way. But even there it was paved across the right-of-way a distance of about 27 feet to a point within three feet of the tracks. A crossing had been maintained for some years, but the planks that formed the crossing had been removed apparently at the time the street paving was completed in 1962 or 1963.

Mrs. Haynes sued Mrs. Workman, the city, and Penn Central's trustees for her personal injuries.

Evidence elicited of plaintiff's witnesses revealed that the crossing had in earlier times accommodated a farm road; and, an affidavit in the record made by one of the railroad's lawyers indicates he thought that from sometime prior to August 15, 1944 until March 1963, then unpaved Wilson Street (or Wilson Avenue) existed; but that when the railroad in March 1963 built a storage track at that point, it removed the farm crossing which, he allowed, was "located in the proximity of Wilson

Street". He stated that the railroad never acknowledged any street or farm crossing at Wilson Street and erected no signs to warn the public of approaching trains, nor did it erect any barricades.

There was evidence that the railroad knew about the pavement, and in fact successfully protested an assessment against it to pay for the pavement on its right-of-way. But there was no evidence about why for ten years the railroad allowed a paved roadway, to all appearances part of a street, to extend 27 feet upon its right-of-way and lead directly to within three feet of the rails, there to terminate without warning at the brink of the declivity created by the lower elevation of the railroad roadbed and tracks.

Plaintiff prosecuted her action on the theory that the city and Penn Central were concurrently negligent and, therefore, joint tort-feasors for failing to abate or warn travelers of the foot-deep dropoff from the end of the pavement to the railroad tracks.

When plaintiff closed her evidence the defendant railroad moved for a directed verdict. The motion was sustained over objections by all the other parties.

A jury found for plaintiff against the City of Nitro. The judgment has been satisfied by the city. Defendant Workman was acquitted of responsibility for her mother-in-law's injuries. The city prosecutes this appeal from the trial court's dismissal of the railroad.

The questions presented are whether the trial court erred in granting Penn Central's motion for a directed verdict; and, if so, whether the City of Nitro can complain about the dismissal on the ground that the city was thereby deprived of its right of contribution from the railroad.

## I.

When the trial court granted Penn Central's motion for a directed verdict, it determined that the railroad owed no duty of care to the general public. This was error.

Penn Central established by affidavit and it was later stipulated that the right-of-way in question was created in behalf of Penn Central's predecessor in title by deed dated January 20, 1882. The deed also established a private farm crossing across the railroad right-of-way. The court held the deed to be dispositive in determining that the railroad owed a duty of reasonable care only to the class that stands in the position of the original beneficiaries of the farm crossing, but not to the general public.

The trial court's ruling that the scope of duty and standard of care owed by a railroad to the public is controlled by its real property rights, is wrong. Plaintiff established a *prima facie* case of negligence against the defendant railroad on several theories of negligence, one or all of which should have gone to the jury.

First, *prima facie* negligence was established by the railroad's failure to observe an ordinance of the City of Nitro, which provides in relevant part:

> "At every point where the tracks or switches of a railroad company cross any unpaved public thoroughfare or street, it shall be the duty of the railroad company to construct proper crossings and approaches thereto on such a grade that it shall not exceed two percent, and under the direction and in accordance with plans and surveys made by the City Engineer as so required by the Council. . .Whenever any street is paved by the City up to a line parallel with the property line of the railroad company's right-of-way on both sides of any railroad crossing, it shall be the duty of the railroad company forthwith to pave said crossing the entire distance of its right-of-way with the same materials and in the same manner that the rest of the street on either side of the street is paved or with other materials to be approved by the City Engineer."

*See Vandergrift v. Johnson*, ____ W. Va. ____, 206 S.E.2d 515 (1974); *Costello v. City of Wheeling*, 145 W. Va. 455, 117 S.E.2d 513 (1961).

Second, the railroad has a duty to maintain all of its property so as to avoid an unreasonable risk of harm, especially where the risk of harm is serious and the cost of prevention slight. *Baker v. City of Wheeling*, 117 W. Va. 362, 185 S.E. 842 (1936); *Cox v. United States Coal and Coke Co.*, 80 W. Va. 295, 92 S.E. 559 (1917); *Ross v. Kanawha and Michigan Ry. Co.*, 76 W. Va. 197, 85 S.E. 180 (1915). If it violated its duty those injured as a result of its dereliction are entitled to recover. Plaintiff made *prima facie* showings of negligence against Penn Central that were wholly unrelated to the question whether the crossing was public or private, or whether there was historically any crossing there at all.

## II.

We now reach the question, does a defendant have an inchoate right to contribution from joint tort-feasors, entitling such defendant to appeal the dismissal before judgment of an alleged joint tort-feasor.

*W.Va. Code*, 55-7-13, states:

> Where a judgment is rendered in an action ex delicto against several persons jointly, and satisfaction of a judgment is made by any one or more of such persons, the others shall be liable to contribution to the same extent as if the judgment were upon an action ex contractu.

This statute was originally enacted in 1872-73. It appears to foreclose any doubt that when a judgment is found against joint tort-feasors, any defendant who pays it can collect from the others. But somehow, this Court and the federal courts have found that the statute forecloses contribution between joint tort-feasors in the absence of a joint judgment. It does not. It merely provides that any one or more of joint tort-feasors who are in judgment and who pay it, have rights of contribution against their fellow joint tort-feasors.

The statute was cited for the proposition that there is no right of contribution in the absence of a joint judgment in *Bluefield Sash and Door Company, Inc. v. Corte Construction Co.*, \_\_\_\_ W. Va. \_\_\_\_, 216 S.E.2d 216 (1975).

The Court's brief analysis of West Virginia contribution law, 216 S.E.2d at 218, states:

> Under West Virginia law there is no right of contribution between joint tort-feasors in the absence of a joint judgment, Code, 55-7-13. Therefore, a joint tort-feasor cannot implead a third party defendant who is a joint tort-feasor under Rule 14(a). See *Wolfe v. Johnson*, 21 F.R.D. 280 (N.D.W.Va. 1958); *Baltimore & O. R. Co. v. Saunders*, 159 F.2d 481 (4 Cir. 1947); *Rouse v. Eagle Convex Glass Specialty Company*, 122 W. Va. 671, 13 S.E.2d 15, 132 A.L.R. 1421 (1940).[1]

*Wolfe v. Johnson*, 21 F.R.D. 280 (N.D. W.Va. 1958), was written by Judge Watkins and involved a fact situation wherein the diversity jurisdiction of the federal court would have been defeated by permitting the husband of plaintiff to be made a third-party defendant in plaintiff's suit, both plaintiff and her husband being residents of Maryland. Defendant claimed the husband, driver of an automobile in which plaintiff was a passenger that collided with defendant's auto, was responsible for plaintiff's personal injuries.

The court recognized that earlier in *Crum v. Appalachian Electric Power Co.*, 29 F.Supp. 90 (S.D. W. Va. 1939), it had allowed one tort-feasor to bring in a joint tort-feasor as a third-party defendant under Fed. Rules Civil Proc., rule 14, citing substantive West Virginia case law entitling one joint tort-feasor to contribution from another joint tort-feasor except where the act is *malum in se*. Judge Watkins, however, believed the more recent case of *Baltimore & Ohio Railroad Co. v. Saunders*, 159 F.2d 481 (4th Cir. 1947) controlled his decision in *Wolfe*. The Fourth Circuit in *Saunders* interpreted *Code*, 55-7-13, to allow contribution only when a joint judgment has already been obtained and to prohibit any inchoate right to contribution. The *Saunders* case further relied on *Rouse v. Eagle Convex Glass Specialty Co.*, 122 W. Va.

---

[1] An excellent discussion of the relation between the substantive law of contribution and rule 14 appears in 3 *Moore's Federal Practice* ¶ 14.02 (2d. ed.).

671, 13 S.E.2d 15 (1940) which held that under *Code*, 56-4-34,[2] a defendant in tort would not have an alleged joint tort-feasor made a party to the action.

Examination of *Rouse* is desirable, it having been relied upon both by the Fourth Circuit and this Court to promote the "no contribution" rule.

The author of the opinion cited no authority to support the case's rule. Indeed, Judge Hatcher wrote:[3]

---

[2] *Code*, 56-4-34, provides:

No action or suit shall abate or be defeated by the misjoinder or nonjoinder of parties, plaintiff or defendant. Whenever such misjoinder shall be made to appear by affidavit or otherwide, the parties misjoined shall be dropped by order of the court, entered of its own accord or upon motion, at any stage of the cause. Whenever in any case full justice cannot be done and a complete and final determination of the controversy cannot be had without the presence of other parties, and such nonjoinder shall be made to appear by affidavit or otherwise at any time before final judgment or decree, the court of its own accord, or upon motion, may cause such omitted persons to be made parties to the action or suit, as plaintiffs or defendants, by proper amendment and process, at any stage of the cause, as the ends of justice may require, and upon such terms as may appear to the court to be just; but no new party shall be added upon motion unless the place of his residence, if known, be stated with convenient certainty in the affidavit of the party questioning his nonjoinder, and, if his place of residence be not known, unless such fact be stated.

[3] Judge Hatcher retired four days after *Rouse* was decided. Hardly did he clear the courtroom before he wrote *Battersey's Case (1623), Some Ups and Downs of the Rule There Pronounced, Affecting Contributions Between Joint Wrongdoers*, 47 W. Va. L. Q. 123 (1490–41). In the article he notes that substantive West Virginia case law established a right to contribution among joint tort-feasors. He examined the different rules abounding in England and in many American jurisdictions and concluded:

Amid such confusion, I see no reason to desert the side of the conflict heretofore adopted by our own court, the side on which lies... "reason, justice and sound policy".

This study, obviously does not include *West Virginia Revised Code* (1931) c. 55, art. 7, sec. 13.

One's impression is that the judge's law review article was his dissent in *Rouse*.

*See also*, 1 Harper, F. & James, J., *The Law of Torts* §§ 10.1-.2 (1956), for a discussion of the origins and development of the English and American rules affecting contribution.

The writer of this opinion would construe the statute as permitting a defendant in tort to have an alleged joint tort-feasor made a party to the action. The majority say not. They take this position: The practice is settled that the plaintiff in tort can sue one or all who have jointly wronged him, and if less than all, can select whom he will sue. The practice permitted here would allow a defendant to select in part those to be sued; would force the plaintiff into uncontemplated and perhaps undesired litigation with every added defendant; and would many times inject an issue, as here, between the original defendant and an added one, which might overshadow the issues between them and plaintiff. In a tort action the general disadvantage to a plaintiff and the general confusion thus resulting would overweigh so completely the advantage to the defendant of having determined therein whether another shall share his liability, that it will be presumed the statute was not intended to apply in such case.

13 S.E.2d at 15-16.

We do not know how to explain the strange reliance by the Fourth Circuit in *Saunders* upon a statute (*Code*, 55-7-13) which does not, in any way, say what that court said it says, and upon a case by our own Court (*Rouse*) in which no precedent for the proposition it stands for is cited, and which ignores our own cases to the contrary. As Judge Watkins observed in *Crum, supra,* contribution between joint tort-feasors is allowed in West Virginia. "Such was the law in Virginia before the state of West Virginia was formed. Thweatt's Adm'r v. Jones, 1 Rand., Va., 328, 10 Am. Dec. 538. Such has been the law of West Virginia since the formation of the state."[4] 29 F.Supp. at 92.

---

[4] It is perhaps a tribute to the legal analysis of this Court's early predecessors that their modification of the harsh common-law rule that denied contribution was later embodied in the Uniform Contribution Among Tort feasors Act (*U.L.A.* § 1 *et seq.* and 1977 Supp.) which has, to date, been adopted by seventeen states.

The right to contribution is set forth in early opinions of the Supreme Court of Appeals of West Virginia. *Buskirk v. Sanders*, 70 W. Va. 363, 73 S.E. 937 (1912); *Payne v. Charleston National Bank*, 112 W. Va. 251, 164 S.E. 252 (1932); *Hutcherson v. Slate*, 105 W. Va. 184, 142 S.E. 444 (1928).

In *Payne, supra,* this Court wrote:

Plaintiffs have appealed from a decree dismissing the bill on demurrer.

The grounds of demurrer are: (1) That the law will not enforce contribution among joint tort-feasors; and (2) that payment by plaintiffs of the judgment against the agent, Drehert, was voluntary.

We cannot share the views of defendants upon either ground. "The general law provides that one joint tort-feasor may ordinarily require contribution from another, except where the wrong is malum in se." [citations omitted]. "While the decisions upon the subject are as yet infrequent and meager, we may safely say that they maintain that where two or more persons are jointly and equally answerable for negligence, and one of them has been compelled to discharge the whole liability, he is entitled to contribution from the others, provided the circumstances are not such that he must be presumed to have intended to do an unlawful act or an intentional wrong. ... [W]here the neglect is joint, as where it consists of the omission of a duty which each of the parties was equally bound, both in law and in good conscience, to discharge, then each is entitled to contribution from the other.

164 S.E. at 252-253.

The *Hutcherson* case is directly on point. This Court considered the forerunner of *Code*, 55-7-13, and held that it did not limit the general right to contribution:

Counsel for Slate say that a joint tort-feasor, as defendant, has no right to complain of an error in favor of his codefendant. They refer to the

general law that a plaintiff can sue joint wrong-doers separately as well as jointly, can take separate judgments for the wrong, and can enforce which judgments he elects. *They contend that the plaintiffs in these cases have the sole right to object to the verdicts in favor of Slate and point to the fact that they are not complaining. Section 8 of Chapter 136, Code, provides for contribution by tort-feasors in the payment of a joint judgment. The general law provides that one joint tort-feasor may ordinarily require contribution from another,* except in cases where the wrong is malum in se. ... [citations omitted; emphasis added.]

The sum of the judgment in these cases is $12,000. Had joint verdicts and judgments been rendered herein, the company would ultimately have been mulcted for only $6,000. As it is now, the verdict relieves Slate from contribution, and the company must pay the entire amount. If the verdict in favor of Slate is based on an erroneous instruction, then the company is *prejudiced* thereby, because it is entitled to insist that its right to demand contribution be extinguished only after the jury has considered the facts under proper instructions. In Virginia Ry. & P. Co. v. Hill, 120 Va. 397, 405, 91 S.E. 194, 197, the court well said:

"If one joint tort-feasor should obtain an erroneous instruction which improperly fixes the liability on another, the latter has the right to except. Any other rule would be indefensible."

Here the instruction not only benefitted Slate, but prejudiced the company; consequently the right of the latter to complain cannot be gainsaid.

142 S.E. at 447.

In *Buskirk v. Sanders, supra,* this Court held that to deprive one of his right of recourse upon or contribution from one with whom he may have cooperated in the wrongful act of cutting timber from another's lands, the act must have been *malum in se.*

These cases clearly establish that when a plaintiff names two joint tort-feasor codefendants, and there is no possibility of joint judgment because of trial court error, the codefendant is still entitled to seek contribution. These cases have not been overruled and are the law of this State.[5]

We find that the trial court erred ¡in dismissing Penn Central and that the City of Nitro has a valid cause of action for contribution against Penn Central. In doing so we further hold that *Bluefield Sash and Door Company, Inc., v. Corte Construction Co.* and *Rouse v. Eagle Convex Glass Specialty Co.* do not correctly state the West Virginia law about contribution between joint tort-feasors, and on that point are overruled.

*Reversed and remanded.*

---

[5] In a related area of the law, we have held that if one joint tort-feasor makes a settlement with the injured plaintiff, another joint tort-feasor is entitled to a *pro tanto* credit on any judgment obtained against him by the plaintiff. *Tennant v. Craig,* 156 W. Va. 632, 195 S.E.2d 727 (1973); *Hardin v. New York Central,* 145 W. Va. 676, 116 S.E.2d 697 (1960); *W.Va. Code,* 55-7-12. This rule impliedly lends support to the equitable consideration that one joint tort-feasor ought not to carry the entire burden.