873 F.2d 1440
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NORTH CAROLINA MONROE CONSTRUCTION COMPANY, Plaintiff,
v.
BWB ASSOCIATES, INC., Defendant-Appellee,
and
UMIC HOUSING DEVELOPMENT CORPORATION, G.O. Bledsoe, Inc., Defendants,
v.
PICKERING, WOOTEN, SMITH & WEISS, Third Party Defendant-Appellant.
NORTH CAROLINA MONROE CONSTRUCTION COMPANY, Plaintiff,
v.
BWB ASSOCIATES, INC., Defendant-Appellant,
and
UMIC HOUSING DEVELOPMENT CORPORATION, G.O. Bledsoe, Inc., Defendants,
v.
PICKERING, WOOTEN, SMITH & WEISS, Third Party Defendant-Appellee.
 Nos. 88-3841, 88-3844.
 United States Court of Appeals, Fourth Circuit.
 Argued March 9, 1989.
Decided April 17, 1989.
 
 William Edward Mohler, II for appellant.
 Ann L. Haight (Karen Speidel Rodgers, Kay, Casto & Chaney on brief) for appellee.
 Before ERVIN, Chief Judge, CHAPMAN, Circuit Judge, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 This case stems from the construction of a turn-key housing project in Mt. Hope, West Virginia. The general contractor, North Carolina Monroe (Monroe) originally sued the owner, UMIC Housing Development Corporation (UMIC), the architect, BWB Associates, Inc. (BWB), and G.O. Bledsoe, an independent contractor who performed inspection services for both UMIC and BWB. Monroe claimed against BWB for negligence and as a third party beneficiary of the contract between BWB and UMIC. UMIC also cross-claimed against BWB based on contract and negligence. BWB filed a third party complaint against Pickering, Wooten, Smith and Weiss (Pickering), an engineering firm, initially seeking indemnification for any judgments for which it might be liable to Monroe or UMIC, and, per an amendment at trial, for contribution from Pickering for judgments or settlements of the primary causes of action.
 
 
 2
 BWB hired Pickering to provide site plans for the utilities at the Mt. Hope project. Pickering provided the plans, but failed to procure West Virginia Department of Health approval, and in fact provided plans that did not conform with that Department's regulations. BWB and Pickering vigorously dispute the role this nonconformity played in the overall damages. Pickering claims that the site plans were an "infinitesimal part" of the problem; BWB states that the "bulk" of the delay stemmed from correcting the problems associated with the site utilities.
 
 
 3
 Shortly before trial was to commence in January, 1987, Monroe, UMIC, BWB and Bledsoe reached a settlement. Pickering participated in preliminary settlement discussions ordered by the district judge but declined to contribute to the ultimate settlement, and the case went to trial on February 11, 1987 solely on the third party complaint by BWB against Pickering.[1] Judgment was entered in BWB's favor on June 25, 1987 in the amount of $150,000. BWB filed a motion to amend the judgment. That motion was denied on March 22, 1988, at which time the District Court also filed its Memorandum Opinion with findings of fact and conclusions of law. In that Memorandum Opinion, the district judge found that BWB was responsible for 57% of the damage and that Pickering was responsible for 43%, and ordered Pickering to indemnify BWB in the amount of $150,000.
 
 
 4
 Pickering appeals on several grounds. It challenges the fact that the District Court retained jurisdiction over the third party complaint, in spite of the fact that the main complaint had already settled, and in spite of the fact that Pickering and BWB were not diverse parties--the basis of jurisdiction of the original case. Pickering further argues that it should have been granted a jury trial, that the cause of action should have been limited to one for negligence, that there was insufficient proof of damages before the district court, and that the judgment was contrary to the law and the evidence, and should have been entered earlier.
 
 
 5
 BWB cross appeals on the grounds that the district court erred in its calculation of damages and that it was error to hold BWB responsible for 57% of the damage.
 
 Jurisdiction
 
 6
 Jurisdiction in the original action between Monroe, UMIC, BWB and Bledsoe was properly predicated on diversity of citizenship. 28 U.S.C. Sec. 1332. BWB and Pickering are both, however, Tennessee corporations. When BWB filed its third party complaint against Pickering, the district court properly took ancillary jurisdiction of it. Dery v. Wyer, 265 F.2d 804 (2d Cir.1959); see also Kenrose Mfg. Co., Inc. v. Fred Whitaker Co., Inc., 512 F.2d 890, 894 n. 11 (4th Cir.1972). Pickering now contends that it was proper for the district court to retain jurisdiction over the third party complaint once Monroe, UMIC, BWB and Bledsoe had settled, and in view of the fact that BWB and Pickering were not diverse.
 
 
 7
 The Fourth Circuit has stated that a decision whether to dismiss a third party complaint after settlement of the main action is left to the discretion of the district court judge, and is thus reviewed on an abuse of discretion standard. Propps v. Weihe, Black and Jeffries, 582 F.2d 1354, 1356 (4th Cir.1978); Duke v. Reconstruction Finance Corp., 209 F.2d 204, 208 (4th Cir.1954). Because the third party complaint was filed well before trial, the case had already proceeded almost to trial, and the district judge was familiar with the case, we hold that it was not an abuse of discretion for the district judge to retain jurisdiction of the claim by BWB against Pickering after the remainder of the claims settled.
 
 Jury trial
 
 8
 Pickering next argues that because Monroe, in its original complaint, demanded a trial by jury, and because neither Pickering nor BWB has consented to the withdrawal of such request, the district court erred in denying Pickering's motion for a trial by jury. However, Judge Knapp's Order of February 5, 1987 states that Pickering agreed that the case was to be tried to the court. Although Pickering now contends that it never so agreed, it has not produced sufficient evidence to refute the district court's statement to the contrary. Furthermore, several courts have held that a third party defendant may not rely on the plaintiff's jury demand, but must make its own demand if it wants to preserve its right to a jury trial. Banks v. Hanover S.S. Corp., 43 F.R.D. 374, 379 (D.Md.1967), quoting 5 Moore's Federal Practice, para. 38.45 n. 2. We affirm the district court's denial of Pickering's motion for a trial by jury.
 
 Negligence
 
 9
 Pickering further attacks the district court's holding that it was negligent in not having its plans approved by the West Virginia Department of Health. It argues that the Department only has jurisdiction over entire projects, and not "mere extensions" of existing lines. However, Sec. 16-1-9 of the West Virginia Code states, "No person ... shall install or establish any system or method of drainage, water supply, sewage or excreta disposal, or solid waste disposal without first obtaining a written permit to install or establish such system or method from the state director of health ..." It is clear from the language of this statute that the site utility plans required the approval of the State Department of Health. Because the section goes on to state that a system found to be nonconforming can be ordered to be made to conform, this statute provides the basis for Pickering's liability. State Road Commission v. Ball, 76 S.E.2d 55, 58 (W.Va.1953). We thus affirm the district court's holding that Sec. 16-1-9 provided the basis for a legal duty.
 
 Contribution
 
 10
 Pickering appeals on the grounds that "Monroe's case against B.W.B. was solely a malpractice or negligence case and thus the third-party case is confined to a malpractice or negligence case." Although this statement is opaque at best, it appears from the ensuing pages that Pickering is arguing 1) that the district court's decision was based on negligence, and should have been limited to that; 2) that it was improper for the district court to allow the complaint to be amended to request contribution, so that in fact, only indemnity and not contribution was available to BWB; 3) that indemnity presupposes a party that is without fault; and 4) that because the Court held BWB to be 57% at fault, BWB is not entitled to collect from Pickering.
 
 
 11
 The district court uses the language of both contract and negligence in its Memorandum Opinion of March 22, 1988, but concludes by ordering Pickering to indemnify BWB in the amount of $150,000. We agree with Pickering that the correct theory was one of negligence, and that much of the language of the district court's decision supports this theory. However, we affirm the district court's decision to allow BWB to amend its complaint to request contribution as well as indemnity. Furthermore, although the district court ordered Pickering to indemnify BWB, it is clear from the fact that the court granted the motion to amend the complaint and from the fact that it apportioned negligence between BWB and Pickering, that the district court was in fact deciding the case on a theory of contribution. Although, as Pickering correctly points out, indemnity is not available to a party found to be partially at fault, Sydenstricker v. Unipunch Products, Inc., 288 S.E.2d 511, 515 (W.Va.1982), contribution is available under such circumstances. The West Virginia Supreme Court of Appeals has held that a right of comparative contribution exists among joint tortfeasors, even when sought by one whose fault exceeds fifty percent. Sitzes v. Anchor Motor Freight, Inc., 289 S.E.2d 679, 689 (W.Va.1982).
 
 
 12
 In West Virginia, one joint tortfeasor is entitled to contribution from another joint tortfeasor, except where the act is malum in se. This right exists even when judgment is entered against only one of the joint tortfeasors. Haynes v. City of Nitro, 240 S.E.2d 544, 560 (1978). Because both Pickering and BWB participated in the events that caused injury to UMIC and Monroe, and BWB properly impleaded Pickering, BWB is entitled to contribution from Pickering. Bowman v. Barnes, 282 S.E.2d 613, 618 (W.Va.1981); Haynes, supra. Contribution will be pro rated to reflect the amount of fault adjudged to BWB and Pickering, respectively. Sitzes, supra.
 
 Damages
 
 13
 Having determined the framework for the calculation of damages, it remains only to consider the appeal and cross appeal concerning the amount of damages. Pickering argues that there was insufficient proof of damages upon which the lower court could render judgment, and that it was not allowed to participate in the settlement negotiations. BWB argues that the decision should have been based on a contract theory and damages calculated accordingly, that it was error to assess any fault to BWB and that it is entitled to attorneys' fees.
 
 
 14
 Because, as discussed above, this is a suit for contribution, the only relevant figure is the amount for which BWB was liable to the other parties: $350,000. This amount was reached in a settlement between BWB and the other parties, so in order for BWB to collect contribution from Pickering, it is necessary that Pickering have had notice of its potential liability, and that the amount of the settlement be reasonable. See Valloric v. Dravo Corporation, 357 S.E.2d 207 (1987) (same requirements in the case of express indemnity following settlement). Pickering was on notice of its potential liability when it was impleaded by BWB, and on notice that it might be liable for contribution when BWB was allowed to amend its pleadings. Furthermore, the district judge heard evidence on the reasonableness of settlement, and we hold that his finding that the settlement was reasonable is not clearly erroneous. Finally, Pickering was evidently offered the chance to participate in settlement negotiations, but refused to do so. See [Pickering's] Motion for Reassignment of Case and Disqualification of Judge, Appellee BWB's Supplemental Appendix at 1-3. It is therefore appropriate to order contribution from Pickering based on the settlement amount.
 
 
 15
 BWB argues that the decision should have been based on a contract theory and damages calculated accordingly. However, as discussed above, the district court's decision was properly based on a theory of negligence, despite a confusion of language. Because the liability of Pickering to BWB was based on contribution and not indemnity, BWB is not entitled to attorneys' fees.
 
 
 16
 BWB also argues that it was error to hold that it was responsible for any of the damage associated with the site utilities. The District Court heard the testimony of Gary Bledsoe, an independent contractor who performed inspection services for both UMIC and BWB, that he knew by November 21, 1979, eleven months before construction began on the utilities, that there were problems with the site utility plans. Although Mr. Bledsoe was under contract only to UMIC at that point, the letter he wrote to UMIC was transmitted to BWB. Joint Appendix at 1010. Later, after closing, Mr. Bledsoe contracted with BWB to perform inspection services, and was therefore acting as their agent in that respect. Mr. Bledsoe testified that although he received the final plans at closing, in early July, 1980, he did not review them in their entirety at any time, but rather looked at each part of the project as it came up. He was thus unaware of the fact that the problem with the utilities had never been remedied until October 2, 1980. This and other examples of negligence and failure to supervise on the part of BWB led the district court to find that BWB was responsible for 57% of the damage associated with the site utilities. That finding is supported by evidence and thus is not clearly erroneous.
 
 
 17
 We believe, however, that an adjustment is necessary to the calculation of damages performed by the district court. The amount paid by BWB in settlement was $350,000. Of that amount, credible evidence establishes, and BWB concedes, 8% was not associated with the site utilities. The remaining 92%, or $322,000, is the amount of the settlement attributable to the site utilities, and it is this amount that must be apportioned between BWB and Pickering. Pickering is thus liable to BWB in the amount of 43% of $322,000, which comes to $138,460. The district court is directed to enter judgment in favor of BWB against Pickering in the amount of $138,460. The district court's decision is therefore
 
 
 18
 AFFIRMED AS MODIFIED.
 
 
 
 [1]
 The case was originally set for trial before Judge Elizabeth Hallanan. She transferred the case to Judge Dennis R. Knapp on January 28, 1987. Judge Knapp presided over the trial