# CHARLESTON.

## FALCONER *v.* SIMMONS.

Submitted January 9, 1902. Decided March 15, 1902.

1. JUDGMENT OF A JUSTICE—*Appeal—Certiorari.*

    The writ of *certiorari* properly so considered does not lie from the judgment of a justice upon the verdict of a jury, but an appeal was always the proper remedy. However, such writ of *certiorari*, by liberality in mere matter of procedure may be treated as an appeal. (p. 173).

2. CONTRACT—*Former Decisions Overruled.*

    An overruled decision is regarded not law, as never having been the law, but the law as given in the later case is regarded as having been the law, even at the date of the erroneous decision. To this rule there is one exception, that where there is a statute, and a decision giving it a certain construction, and there is a contract valid under such construction, the later decision does not retroact so as to invalidate such contract. (p. 178).

Error to Circuit Court, Roane County.

Action by S. A. Falconer against J. M. Simmons. From a judgment of the circuit court reversing a judgment of a justice, Simmons brings error.

*Affirmed.*

WALTER PENDLETON and VANDALE & STARKEY, for plaintiff in error.

J. G. SHILLING, O. J. CHAMBERS, and S. E. BOGGESS, for defendant in error.

BRANNON, JUDGE:

In an action before a justice in Roane County a judgment was given upon the verdict of a jury, and then the judge of the circuit court awarded a writ of *certiorari.* There was a motion to quash that writ in the circuit court, but it was overruled, and judgment rendered reversing the judgment of the justice, setting aside the verdict of the jury, awarding a new trial, and retaining the case in that court for a new trial. The action was by *S. A. Falconer* v. *J. M. Simmons.* Simmons has brought the case to this Court by writ of error.

The writ of *certiorari* was awarded and judgment'rendered upon it while the case of *Barlow* v. *Daniels*, 25 W. Va. 512, was still in force before it was overruled by the case of *Richmond* v. *Henderson*, 48 W. Va. 389. The former case held that an appeal would not lie from the judgment of a justice rendered upon the verdict of a jury, but that *certiorari* was the proper remedy; whereas in the later case it was held that a writ of *certiorari* would not lie in such a case, but that an appeal was the proper remedy. Therefore, this case presents this question: Is the writ of *certiorari* good on the ground that when sued out it was good according to the case of *Barlow* v. *Daniels*, or is it rendered abortive and ineffectual by the subsequent case of *Richmond* v. *Henderson* overruling *Barlow* v. *Daniels?* Has Simmons a vested right to his writ of *certiorari*, so that the later decisions could not effect that writ? A person has no vested right in a particular remedy. The first decision in *Barlow* v. *Daniels* can not be appealed to, to sustain the writ of *certiorari*, because when a decision is overruled it is regarded as never having been the law for a moment, but on the contrary the law as given by the later decision is held to have been the true, sound law at the very moment when the first erroneous decision was pronounced.

1st Bl. Com. 70, lays down the long standing elementary rule as follows: "But even in such cases the subsequent judges do not pretend to make a new law, but to vindicate the old one from misrepresentation. For if it be found that the former decision be manifestly absurd or unjust, it is declared, not that such a sentence is bad law, but that it was not 'law.' This subject is discussed at large in an opinion written by me in *Ralston* v. *Weston*, 48 W. Va. 188. Also in an opinion written by Judge Poffenbarger in *Harbert* v. *Railroad Co.*, decided January, 1902. I will add some further authorities upon the subject. In *Hibbits* v. *Jack*, 97 Ind. 570, a will gave a wife land, "as long as she remains my widow." This provision was held to vest a fee in the wife by one decision. The widow sold the land on the faith of that decision, but afterwards this case was overruled, and it was held that a widow did not take a fee under such a will.

The syllabus in the case reads thus: "A decision of the supreme court afterwards overruled is not a general rule of property even as to purchases made on the faith of it before it

was overruled. It is only the law of that case binding the parties to it, and those claiming under them, as to the matters involved in that suit." The court said that the decisions of courts "are not law, but only evidence of the law." In *Paul* v. *Davis,* 100 Ind. 422, was a question involving title to land, and it was held that judicial decisions are not of themselves the law, and one can not hold as a *bona fide* purchaser merely on the ground that former decisions have declared the law as claimed by his grantor. The Court said: "A judicial decision does not make unalterable law, nor is it the law in the sense that statutes are law. It was justly said by Senator Platt, in *Yates* v. *Lansing,* 9 Johns. 415, 'that the decisions of courts are not the law; they are only evidence of the law.' In another case it was said: 'I hope we shall consider what a decision really is and treat it accordingly; not as the law, nor as giving the law, but simply evidence of the law, and not conclusive evidence, but only *prima facie* evidence of what the law is.' " *Henry* v. *Bank of Salina,* 5 Hill 535. The court goes on to say that decisions that are erroneous may be overruled, citing eminent authority, and saying when overruled that they never were the law. The case of *Lewis* v. *Symmes,* 61 Ohio St. Reports 471, is an important case. Acts allowing assessments on property owners for local improvements were held valid by the supreme court. Then came a new act valid under those decisions; then improvements were made by the city; then came a decision overruling the former cases and holding the statute allowing the assessments to be unconstitutional. The court held that, the rule that retrospective operation should not be given to a change in judicial opinions respecting the constitutional validity of legislative enactment can be invoked only to avoid the impairment of the obligation of contracts made prior thereto pursuant to statutory provisions, and in reliance upon former adjudications respecting their validity. The court said that judicial decisions declare, but do not make law, and held that the rule that decisions do not retroact applies to rights resting in contracts. The court said, that an accurate statement of the rule was that made by Chief Justice Waite, in *Douglas* v. *Pike Co.,* 101 U. S. 677: "The true rule is to give a change of a judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights, that would be given to a legislative amendment; that is, make it

prospective, but not retroactive. After a statute has been settled by judicial construction the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as an amendment of the law by means of a legislative enactment." The court added that, "this was the true interpretation of *Gelpcke* v. *Dubuque*, 1 Wall. 175, and like cases, and refused to apply the rule to the case before the court because the ruling can be invoked only for the inforcement of rights which rest in contracts. It does not appear that it has ever been applied to any other purpose." The Indiana decisions admit the rule that overruled cases never were law, but they make an exception of the cases construing statutes as to contracts resting on the first construction of the statute, holding valid these contracts existing prior to later overruling cases. Cases cited above and *Thompson* v. *Henry,* 153 Ind. 156. The case of *Ray* v. *Natural Gas Co.,* 138 Pa. St. 576, 590, is pointedly to the same effect. The opinion says: "Courts of highest authority of all the States, and of the United States, are not infrequently constrained to change their rulings upon questions of the highest importance. In so doing the doctrine is, not that the law is changed, but that the court was mistaken in its former decision, and that the law is, and really always was, as it is expounded in the later decision. The members of the judiciary in no proper sense can be said to make or change the law; they simply expound and apply it to individual cases. To this general doctrine there is a well established exception as follows: After a statute has been settled by judicial construction, the construction becomes, so far as contract rights are concerned, as much a part of the statute as the text itself, and a change of decision is, to all intents and purposes, the same in effect on contracts as an amendment of the law by means of a legislative enactment. *Douglas* v. *Pike Co.,* 101 U. S. 677. This agrees with the Ohio and Indiana view. The opinion says, "that this exception to the general rule relates not to the general law, but to statute law;" that is, that where the first decision applied to and construed a statute, contract rights under that statute were such as it conferred tested by the first decision; but this does not apply to unwritten common law, or to any but contract rights. As to contracts the construction of the statute by the first decision is

part of the contracts. It was held that a case overruling a former one, and thus affecting prior oil leases, must test rights under it, on the ground that a decision of a court was not a "law" impairing contracts. In *Bradshaw* v. *Duluth Imperial Co.*, 52 Minn. 59, the syllabus is: "An erroneous decision is not bad law; it is no law at, all, and never was the law. It is the law of the particular case, and binding on the parties before the court, but does not conclude parties having rights dependent on the same question." The opinion says, "that the U. S. Supreme Court cases like *Douglas* v. *Pike Co.*, cited, are applicable to municipal bonds where contracts have been made under settled construction of the statute law, but that in no particular could it be applied to the cases before the court." The cases involved title to realty. One decision held that land under lake water could not be severed from the ownership of riparian land; a later case overruled that case, and held that it could be, and that the submerged land was subject to public easement to which the balance of the land was not subject. The case held that no vested property was conferred by the overruled case. *Alferilz* v. *Borgwardt*, 126 Cal. 201 strictly asserts the proposition that overruled cases upon general law never reflected the true law, and that even contracts valid under them are not saved from the operation of the cases overruling former decisions. The court considered the *Federal Cases* like *Douglas* v. *Pike Co.*, and says that, they apply to decisions construing statute law, not general law, and contracts made under such statute law, and not to decisions upon general law, even to contracts made on the faith merely of those decisions. "The law and the opinion of a judge are not synonymous terms; the latter may mistake the law of the land. * * * A decision which overturns a prior one has a retroactive effect." 2 Well, Tax Titles, s. 1174. "Thus when a former decision, otherwise entitled to rank as a precedent, is disregarded or overruled, the theory of the law is, that such former decision never was the law, that is, never was accordant with true legal principles and reason. The later decision states the law not only as it is, but as it always was. That this distinction is, as matter of fact and law, part of the rule of *stare decisis* all judicious writers, commentators and courts assert." Chamberland on *Stare Decisis* 16. In *Allen* v. *Allen*, 16 L. R. A. 646, the California court holds that even decisions on which parties to contracts rely are

not a part of the contracts, so far as to exempt them from subsequent decision declaring a different rule and overruling a former decision. The court said: "These decisions do not change the law; they simply declare what was the law. Courts do not make or repeal a law. They can say what a law means, and if afterwards they see they have made a mistake, they can correct their error by overruling the former decision, the consequence of which is that the blunder is thence forward deemed never to have been the law." Bishop on Contracts s. 569 lays down the same rule. So does 3 Ballard on Real Property s. 103. Also *Rockhill* v. *Nelson*, 24 Indiana ———, and *Frink* v. *Darst*, 14 Ill. 304. We have the same rule propounded by Mr. Justice Brown in *Wade* v. *Travis County*, 174 U. S. 499. He says: "In the theory of the law the construction given bonds of this description in the *Mitchell Case* [which overruled former Texas cases] is, and always has been, the proper one." What limits a later decision to transactions occuring after it? Not the Federal Constitution in the clause denying a state power to make a law impairing a contract, because a judicial decision is not a "law" under that clause. *Lehigh Water Co.* v. *Easton*, 121 U. S. 388; *Laidley* v. *Land Co.*, 159 U. S. 103. The State Constitution does not do so. The courts having power to alter decisions, and such being the retroactive effect of change, the fourteenth amendment denying a state power to deprive one of property without due process of law, cannot affect this power of the courts, because it makes no change in powers of states existing before it came. If the right affected is one under general common law, clearly the old decision was never law, and the transaction, though dating prior to the later decision, is governed by it. The cases do make an exception based on the theory that where there is a statute, and a decision construing it, and a contract valid under such construction of the statute, the statute is a part of that contract, and if a decision holds a contract good under that statute, that decision or rather that statute so construed by it, and as construed by it, is part of the contract, and a later decision does not affect it, though it holds that the statute properly construed, does not justify the contract. *Douglas* v. *Pike Co.*, 101 U. S. 677; *Basket* v. *Maxey*, 134 Ind. 182, 190; *Ohio Life Insurance Co.* v. *Debolt*, 16 How. 415; *Stephenson* v. *Brady*, 139 Ind. 60; *Thompson* v. *Henry*, 153 Ind. 156; *Ray* v. *Natural Gas Company*, 138 Penn St.

576; *Lewis* v. *Symmes,* 61 Ohio St. 471; *Bradshaw* v. *Duluth Imperial Co.,* 52 Minn. 559; Southerland on State Constr. s. 319. It is difficult to sustain this exception on principle because a decision is not a "law" impairing a contract; but it is only a right based on a statute that comes within this exception. The exception goes no further. It is plainly an exception made by the courts, at the call of justice, to protect a contract made on the faith of a statute as expounded in the first decision. My conclusion from a survey of the authorities is, that the fundamental rule still holds, that is, that when former decisions are overruled they are considered as never having been the law, but that for a time they obscured the true and sound law; but that this rule is subject to one exception, based on decisions of the courts, that is, that where there is a statute, and a decision of the highest court construing it, and a contract is made which is good under that statute so construed, no subsequent contrary decision can affect such prior contract; but there must be a statute and a contract under it, the statute being a part of the contract; for a mere decision expressive of general or common law will not protect even a contract valid under that common law tested by a prior decision against the effect of a subsequent change of decision.

For support of the proposition that this exception above stated applies only to a statute law and contracts under it I call particular attention to the fact that the rule, as laid down by Chief Justice Waite, in *Douglas* v. *Pike Co.,* cited, is in words so limited. He says, "the true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights, that would be given to a legislative amendment; that is, make it prospective, but not retrospective. After a statute has been constructed by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself."

I will add that the very fact that the courts and text books use strong cautionary language against hasty overruling of decisions alone shows, that overruling decisions do retroact on past transactions. The reason that they do retroact is the one given by such courts and books against improper overruling decisions. The caution would not be given, if overruling decisions operated only in future transactions. There would be no objections

to the introduction of the true rule as to future transactions. It follows from these views that the former decisions like *Barlow v. Daniels* can not give Simms a vested right to his writ of *certiorari*. But while this is so we have come to the conclusion that the writ of *certiorari* may be made to subserve the purposes of an appeal. An appeal is the process to reverse the judgment of a justice and this writ of *certiorari* sought the same purpose.

Judge Poffenbarger gave reasons for the same conclusion in the cited case of *Harbert v. Railroad Co.* It is true that this *certiorari* does not emanate from the justice like an appeal within ten days from the judgment; but it emanated from the circuit judge, under section 4, chapter 110, of the Code. But we may call in section 174, chapter 50. Under it a judge may grant an appeal after the expiration of ten days, and within ninety days after the judgment, upon showing good excuse for not having taken his appeal from the justice. Now while the case of *Barlow v. Daniels* prevailed no appeal could be gotten from a justice. That seems to me to constitute good excuse for a failure to apply to the justice and for applying to a judge. It is true this *certiorari* was issued within ten days after the judgment, and a judge under the Code can not act until after that period; but either of those processes, the *certiorari* or the appeal, is a protest against the judgment, and the *certiorari* is none the less though it was granted within the ten days. The *certiorari* is just as much a complaint against a judgment as is an appeal. It is true that in *Richmond v. Henderson,* 48 W. Va. 389, we did hold that a *certiorari* would not lie in such a case, but only an appeal, and we still say so, viewing the *certiorari* strictly. But we may have gone too far in that case in saying that relief could not be administered upon a writ of *certiorari*. We now hold that such a writ under the particular circumstances of this case can be made to answer the purpose of an appeal. True, it is pretty difficult to so hold, it somewhat jars against strong principles; but the call of justice, the plain right of the party to have the judgment reviewed in the circuit court, have impelled us in the spirit of liberality in a matter of mere form of procedure to hold the writ of *certiorari* under the circumstances to be efficacious. It is rather straining a point to do so, we confess; but the arguments against doing so are rather technical than substantial.

There is nothing in the point that the court erred in its judgment in setting aside the verdict and in reversing the judgment. It could render no other judgment. Treating the *certiorari* as having the force of an appeal it operated without such judgment, *per se,* to reverse the judgment and set aside the verdict. Such is the force of an appeal. *Barlow* v. *Daniels,* 25 W. Va. p. 521; *Bratt* v. *Marum,* 24 *Id.* 652.

As to the subject that the bond is not such as the law requires upon an appeal, but is such as the statute requires in cases of *certiorari,* it is only necessary to say that both bonds are identical in the provision under the law that the party shall perform and satisfy such judgment or order as may be rendered by the circuit court. The law makes the bonds identical in this respect. The fact that this bond further provides for the payment of costs and damages will not hurt, as it is surplusage. Viewing it as an appeal bond this addition does not hurt it. In fact, however, it is nothing but a further provision of the same thing that is covered by the clause requiring its obligors to perform and satisfy the judgment, as that would require payment of cost and damages. The bond is good as an appeal bond. Moreover the Code gives the court power upon an appeal to require another bond. It is hardly worth while to refer to the point that the petition for *certiorari* is in another case. The basis of this claim is that the petition says that the amount claimed in the suit was two hundred and seventy-six dollars, whereas the summons claimed three hundred dollars, and the petition recites the verdict as rendered on the 23rd of January, whereas it was the 26th. Now, the names of the parties and the amount of the verdict are the same, and there is no misdescription of the amount claimed in the action, as the real claim in the action is that stated in the complaint, two hundred and seventy-six dollars and the petition was not wrong in so stating. The petition does not state that the verdict was on the 23rd day of January. It simply says that the jury was demanded on that day, which is correct, but the *venire facias* was returnable on the 26th, when the trial took place. The petition does not state the verdict as of the 23rd. If it did, it would be mere immaterial misdescription.

We therefore affirm the judgment of the circuit court and remand the case for a new trial.

*Affirmed.*