ARNOLD R. SITZES, *et al., Admrs., etc.,*

PLAINTIFFS

*v.*

ANCHOR MOTOR FREIGHT, INC., *etc.,*

THIRD-PARTY PLAINTIFF

*v.*

JAMES R. ROBERSON,

THIRD-PARTY DEFENDANT

(No. CC924)

Decided March 23, 1982.

*W. E. Mohler* for plaintiff Anchor Motor Freight, Inc.

*John R. Hoblitzell and Richard D. Jones* for third-party defendant.

MILLER, CHIEF JUSTICE:

We have accepted certain certified questions from the United States District Court for the Southern District of West Virginia pursuant to the provisions of W. Va. Code,

51-1A-1, *et seq.*[1] Generally, we are asked to state (1) whether *Coffindaffer v. Coffindaffer,* 161 W. Va. 557, 244 S.E.2d 338 (1978), which abolished the doctrine of interspousal immunity, is to be applied retroactively, and (2) what effect our adoption of comparative negligence as announced in *Bradley v. Appalachian Power Co.,* 163 W. Va. 332, 256 S.E.2d 879 (1979), has upon both the rules of contribution among joint tortfeasors and a jury's distribution of the damage award under our wrongful death statute, W. Va. Code, 55-7-6 (1976).

The facts of the case have been presented to us as follows:

"Plaintiffs in this action, Arnold L. Sitzes and Edward L. Rucks, are administrators of the estate of Patricia Ann Roberson. Mrs. Roberson was killed in an automobile accident on January 19, 1977. At the time, she was a passenger in a pick-up truck driven by her husband, James R. Roberson, which collided with a motor truck driven by Oswald R. Carter, an agent and employee of the defendant Anchor Motor Freight, Inc. Mrs. Roberson is survived by her husband and her son, Joseph Eugene Roberson.

"Plaintiffs commenced this action against the defendant on November 23, 1977. With leave of court, defendant filed a third-party complaint for contribution against Mr. Roberson on February 12, 1980. This court, preceiving a potential conflict between West Virginia's normal rules of contribution (which would apportion damages equally among joint tortfeasors) and the state's newly-adopted rule of comparative negligence (which requires a jury to 'assign the proportion or degree of this total negligence among the various parties,' *Bradley v. Appalachian Power,* 163 W. Va. 332, 256 S.E. 2d 879, 885 (1979), and which denies recovery to a plaintiff whose negligence equals or exceeds 50% of the combined negligence of the

---

[1] We have discussed this statute at some length in *Abrams v. West Virginia Racing Commission,* ___ W. Va. ___, 263 S.E.2d 103 (1980), and in *Morningstar v. Black and Decker Manufacturing Company,* 162 W. Va. 857, 253 S.E.2d 666, 668-69 (1979).

parties to the accident), instructed the jury to assign percentages of fault to the third-party plaintiff and third-party defendant if it found that both had been negligent. Plaintiffs' decendent was not negligent, and was therefore excluded from the apportioning.

"On March 31, 1981, the jury returned a verdict for the plaintiffs and against the defendants and assessed plaintiffs' damages in the amount of $100,000. In accordance with the provisions of West Virginia Code § 55-7-6, the jury directed that the plaintiffs should distribute $75,000 (or 75%) of the award to Mrs. Roberson's son, Joseph Eugene Roberson, and $25,000 (25%) to Mrs. Roberson's husband, James R. Roberson, the third-party defendant.

"On the third-party claim, the jury found both the third-party plaintiff and the third-party defendant negligent, and found that the degree of negligence attributable to Anchor Motor Freight was 70% and the degree attributable to James R. Roberson was 30%.

"Thus, in summary, the jury concluded that the accident was caused by the combined negligence of the defendant (70% negligent) and the third-party defendant (30% negligent); that the amount of damages was $100,000; and that the award should be distributed 25% to the decedent's husband and third-party defendant and 75% to the son."

## RETROACTIVITY OF COFFINDAFFER

We answer the first certified question—'[W]as the third-party complaint barred by the doctrine of interspousal immunity?" in the negative. In doing so, we rule that *Coffindaffer v. Coffindaffer*, 161 W. Va. 557, 244 S.E.2d 338 (1978), is to be applied retroactively.

Our decision in *Coffindaffer* was based on two principles: (1) the plain meaning of W. Va. Code, 48-3-19 (the Married Woman's Act), which allows a married woman to sue or be sued as if she were single, and (2) the existence of a

general movement in all jurisdictions to abolish common law immunities, including interspousal immunity.

We acknowledged in *Coffindaffer* that we were overruling this Court's previous construction of the Married Woman's Act as announced in *Poling v. Poling*, 116 W. Va. 187, 179 S.E. 604 (1935). In doing so, we noted that the trend in this State was decidedly in favor of the abolishment of common law immunities. For example, charitable immunity of hospitals was struck down in *Adkins v. St. Francis Hospital*, 149 W. Va. 705, 143 S.E.2d 154 (1965). Family immunity was limited to parent-child and husband-wife relationships in *Freeland v. Freeland*, 152 W. Va. 332, 162 S.E.2d 922 (1968). In *Long v. City of Weirton*, ____ W. Va. ____, 214 S.E.2d 832 (1975), and *Higginbotham v. City of Charleston*, 157 W. Va. 724, 204 S.E.2d 1 (1974), we held that there was no common law governmental immunity for municipal corporations. Furthermore, in *Lee v. Comer*, 159 W. Va. 585, 224 S.E.2d 721 (1976), the doctrine of parental immunity was abrogated so as to permit an unemancipated minor child to sue for injuries received in a motor vehicle accident.[2] All of these decisions except *Freeland* overruled prior case law and all were decided by unanimous opinion. These decisions found support from other courts as well. In *Coffindaffer*, we cited twenty-four other jurisdictions which had abolished at that time the common law doctrine of interspousal immunity. Most commentators also oppose the doctrine.[3]

When we compare the reasons given for the decision in *Coffindaffer* to our rules in regard to retroactivity, we

---

[2] Recently, in *Ohio Valley Contractors v. The Board of Education*, ____ W. Va. ____, 288 S.E.2d 814 (1982), we concluded that a county board of education had no common law immunity nor was it entitled to claim the State's immunity under Section 35 of Article VI of the West Virginia Constitution.

[3] *See* 1 Harper & James, *The Law of Torts* §§ 8, 10 (1956); Prosser, *Handbook of the Law of Torts* § 122 (4th ed. 1971); Farage, *Recovery for Torts Between Spouses*, 10 Ind. L. J. 290 (1935); Jayme, *Interspousal Immunity: Revolution and Counterrevolution in American Tort Conflicts*, 40 So. Calif. L. Rev. 307 (1967); McCurdy, *Personal Injury Torts Between Spouses*, 4 Vill. L. Rev. 303 (1959); Annot., 92 A.L.R.3d 901 (1979).

conclude that the case should be made retroactive. In Syllabus Point 4 of *Bradley*, we discussed the primary reason for extending retroactivity:

> "Retroactivity of an overruling decision is designed to provide equality of application to the overruling decision because its new rule has been consciously designed to correct a flawed area of the law."[4]

In Syllabus Point 5 of *Bradley*,[5] we outlined six factors we would consider in limiting retroactivity. These factors can be briefly summarized: (1) whether the issue involves a settled area of the law where retroactivity would be less justified or a changing area where retroactivity would be more likely and whether the new rule is foreshadowed; (2) procedural rules are more likely to be afforded retroactivity than substantive points; (3) common law rule changes are more likely to be applied retroactively; (4) substantial public policy changes are less likely to be applied retroac-

---

[4] *Bradley's* discussion of retroactivity was designed to provide a more discreet test than our traditional rule in *Falconer v. Simmons*, 51 W. Va. 172, 41 S.E. 193 (1902), which with one exception made all overruling decisions retroactive.

[5] Syllabus Point 5 states:

"In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions."

tively; (5) the more radical departure from prior law the less likelihood for retroactivity; and (6) analogous decisions of other jurisdictions.

The issue in this case arises out of a tort, not a traditionally settled area of the law, and it is clearly foreshadowed by our decisions prior to *Coffindaffer* overruling other common law immunities, particularly family immunities. Moreover, there was and still is a recognized trend throughout the rest of the country to limit or abolish common law immunities. Though the issue presented here is substantive rather than procedural, in the tort area, our statute of limitations and the rule itself (dealing as it does solely with spouses) limits the class that will benefit by retroactivity. Thus, the impact of applying *Coffindaffer* retroactively is not substantial as it will affect only a limited number of cases.[6]

The fourth and fifth criteria of *Bradley* indicate that prospective application of a rule will ordinarily be favored where substantial public issues are involved arising from statutory or constitutional interpretations that represent a clear departure from prior precedent. We do not believe any substantial public policy issue was involved in *Coffindaffer* and its decision was not a radical departure from our previous cases restricting the substantive law of a common law immunity.[7]

---

[6] We acknowledge that W. Va. Code, 55-2-21 (1961), permits third-party claims to be tolled so long as the original claim remains pending. However, the ordinary statute of limitations for personal injuries is two years so that few cases filed prior to the decisions in *Coffindaffer* will be pending and certainly no accident prior to *Coffindaffer's* decision date (May 16; 1978) can still be filed. We have recently said in *State v. Gangwer*, ___ W. Va. ___, 283 S.E.2d 839 (1981), that where the benefits of retroactivity will fall on only a limited class of cases, it will tend to be granted.

[7] Because they articulate no general rule, we do not find helpful the few decisions from other jurisdictions which have mentioned retroactivity on abolishing interspousal immunity. *E.g., Shook v. Crabb*, 281 N.W.2d 616 (Iowa 1979); *Darrow v. Hanover Township*, 58 N.J. 410, 278 A.2d 200 (1971); *Digby v. Digby*, 388 A.2d 1 (R.I. 1978).

In viewing all the circumstances under the facts of the present case, we conclude that the decision to abolish the common law rule of interspousal immunity contained in *Coffindaffer* should be applied retroactively.

## CONTRIBUTION–JOINT AND SEVERAL LIABILITY

Having decided that *Coffindaffer* is to be applied retroactively, we next address the remaining certified questions relating to contribution among joint tortfeasors and payment of the jury's award.[8]

This jurisdiction is committed to the concept of joint and several liability among tortfeasors. *Tennant v. Craig*, 156 W. Va. 632, 195 S.E.2d 727 (1973); *Hutcherson v. Slate*, 105 W. Va. 184, 142 S.E. 444 (1928). A plaintiff may elect to sue any or all of those responsible for his injuries and collect his damages from whomever is able to pay,

---

[8] These certified questions* pose several issues which can be reduced to the following:

(a) Should joint tortfeasors be liable on contribution to their respective degrees of fault?

(b) Does *Bradley* preclude a right of contribution by a 70% joint tortfeasor from a 30% joint tortfeasor?

(c) What extent, if any, is there a right of setoff of judgments where parties have obtained cross judgments?

In *City of Fairmont v. Retail, Wholesale, and Department Store Union, AFL-CIO*, ___ W. Va. ___, 283 S.E.2d 589, 590 (1980), we stated: "We have traditionally maintained that upon receiving certified questions we retain some flexibility in determining how and to what extent they will be answered."

* The text of the questions are:

"In this action for contribution by one joint tortfeasor against another, what recovery, if any, is the defendant and third-party plaintiff who is 70% negligent entitled to make against the third-party defendant who is 30% negligent?

"In this action, in which Mr. Roberson, the 30% negligent third-party defendant, has also been found by the jury to be entitled to 25% of the wrongful death award to be distributed by the plaintiff administrators, to what extent, if at all, is Mr. Roberson entitled to receive the 25% portion?

"In the event Mr. Roberson receives less than the entire 25%, who realizes the benefit of that 25% portion to the extent not received by Mr. Roberson?

"In the event answers to the foregoing questions do not serve to adjudicate fully the rights of the parties with respect to the $100,000 jury verdict, what further judgment is appropriate?"

irrespective of their percentage of fault. Our adoption of a modified rule for contributory negligence in *Bradley* did not change our adherence to joint and several liability:

> "Neither our comparative negligence rule nor *Haynes* [*v. City of Nitro*, 161 W. Va. 230, 240 S.E.2d 544 (1977)] is designed to alter our basic law which provides for joint and several liability among joint tortfeasors after judgment. *Hardin v. New York Central Railroad*, 145 W. Va. 676, 116 S.E.2d 697 (1960); *Muldoon v. Kepner*, 141 W. Va. 577, 91 S.E.2d 727 (1956). Most courts which have considered the question after either a statutory or judicial adoption of some form of comparative negligence have held that the plaintiff can sue one or more joint tortfeasors, and if more than one is sued and a joint judgment is obtained, he may collect the entire amount from any one of the defendants. *See, e.g., American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 588-90, 146 Cal. Rptr. 182, 188-90, 578 P. 2d 899, 905-06 (1978); *Gazaway v. Nicholson*, 190 Ga. 345, 348, 9 S.E.2d 154, 156 (1940); *Kelly v. Long Island Lighting Co.*, 31 N.Y.2d 25, 30, 334 N.Y.S.2d 851, 855, 286 N.E.2d 241, 243 (1972); *Seattle First National Bank v. Shoreline Concrete*, 91 Wash.2d 230, [234-36] 588 P.2d 1308, 1313-1314 (1978); *Chille v. Howell*, 34 Wis.2d 491, 498-500, 149 N.W.2d 600, 604-605 (1967); V. Schwartz, *Comparative Negligence* (1974), § 16.4, at 253." *Bradley* at 886.

It is clear from the foregoing quotation that the concept of joint and several liability after judgment relates primarily to the liability of all of the joint tortfeasors to the plaintiff. We decline here, as we did in *Bradley*, to alter our rule permitting joint and several liability as against joint tortfeasors after judgment. This concept of joint and several liability after judgment runs throughout other areas of our judgment law. *E.g., Newton v. Dailey*, ____ W. Va. ____, 280 S.E.2d 91 (1981); W. Va. Code, 55-8-6.[9]

---

[9] Here, the plaintiff in the wrongful death action elected to sue only Anchor and it is therefore liable to the plaintiff for the entire $100,000 jury verdict.

## COMPARATIVE CONTRIBUTION

In the present case, the trial court permitted the jury to apportion the two joint tortfeasors. The jury concluded that the defendant, Anchor Motor Freight, Inc., [hereinafter Anchor], was 70% at fault while the third-party defendant, Mr. Roberson, was found to be 30% at fault.[10] The certified question inherently demands consideration of whether we recognized that primary fault or negligence should be apportioned among joint tortfeasors in accordance with their degrees of fault.

The basic purpose of the joint and several liability rule is to permit the injured plaintiff to select and collect the full amount of his damages against one or more joint tortfeasors. This rule however need not preclude a right of comparative contribution between the joint tortfeasors *inter se*. The purpose of this latter rule is to require the joint tortfeasors to share in contribution based upon the degree of fault that each has contributed to the accident. There is a definite trend in the field of tort law toward allocation of judgmental liability between the joint tortfeasors *inter se*. It is thought to be fairer to require them to respond in damages based on their degrees of fault.[11]

Historically, at common law, there was no right of contribution between joint tortfeasors on the theory that

---

[10] In our decision in *Haynes v. City of Nitro,* 161 W. Va. 230, 240 S.E.2d 544 (1977), we held if a plaintiff does not elect to sue all of the joint tortfeasors, those that have been sued may bring in the absent joint tortfeasors in a third-party suit for contribution.

[11] This is the standard adopted in the *Uniform Comparative Fault Act,* 12 U.L.A. §2(a)(2) (1977). Commentators are also uniform in their approval of proportionate or comparative contribution. Berg, *Comparative Contribution and its Alternatives: The Equitable Distribution of Accident Losses,* 43 Ins. Counsel J. 577 (1976); Griffith, Helmsley & Burr, *Contribution, Indemnity, Settlements & Releases, What the Pennsylvania Comparative Negligence Statute Did Not Say,* 24 Vill. L. Rev. 494 (1979); Pearson, *Apportionment of Losses Under Comparative Fault Laws—An Analysis of the Alternatives,* 40 La. L. Rev. 343 (1980)

the law should not aid wrongdoers. The historic development of this point is contained in *Northwest Airlines, Inc. v. Transport Workers Union of American, AFL-CIO, et al.,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750, (1981), where Justice Stevens states in note 17:

> "Thirty-nine States and the District of Columbia recognize to come extent a right to contribution among joint tortfeasors. In 10 jurisdictions, the common-law rule was initially changed by judicial action."[12]

The right of contribution developed because it was thought unfair to have one of several joint tortfeasors pay the entire judgment and not be able to obtain contribution from any of his fellow wrongdoers. It would seem proper social policy that a wrongdoer should not escape his liability on the fortuitous event that another paid the entire joint judgment. Oddly enough where the action was *ex contractu,* the common law had no difficulty in fixing a right of contribution where one party to a breached contract paid more than his share of the common obligation.[13]

In this State since 1872, by virtue of W. Va. Code, 55-7-13, we have permitted a right of contribution between joint tortfeasors after judgment "to the same extent as if the judgment were upon an action ex

---

[12] These cases were cited for the ten jurisdictions changing the rule by judicial decision: *George's Radio, Inc. v. Capital Transit Co.,* 126 F.2d 219 (D.C. Cir. 1942); *Skinner v. Reed-Prentice Division Package Machinery Co.,* 70 Ill.2d 1, 15 Ill. Dec. 829, 374 N.E.2d 437 (1977), *modified,* 70 Ill.2d 16 (1978); *Best v. Yerkes,* 247 Iowa 800, 77 N.W.2d 23 (1956); *Quatray v. Wicker,* 178 La. 289, 151 So. 208 (1933); *Bedell v. Reagan,* 159 Me. 292, 192 A.2d 24 (1963); *Underwriters at Lloyds v. Smith,* 166 Minn, 388, 208 N.W. 13 (1926); *Royal Indemnity Co. v. Aetna Casualty & Surety Co.,* 193 Neb. 752, 229 N.W.2d 183 (1975); *Goldman v. Mitchell-Fletcher Co.,* 292 Pa. 354, 141 A. 231 (1928); *Davis v. Broad Street Garage,* 191 Tenn. 320, 232 S.W.2d 355 (1950); *Ellis v. Chicago & N. W. R. Co.,* 167 Wis. 392, 167 N.W. 1048 (1918).

[13] *See* Leflar, *Contribution and Indemnity Between Tortfeasors,* 81 U. of Penn. L. Rev. 130, 134-35 (1932).

contractu."[14] Thus, our cases in both contract and tort have utilized the phrases "joint and several liability" and the "right of contribution" if the judgment debtor pays more than his *pro tanto* share of the liability. *E.g., Newton v. Dailey, supra; Hutcherson v. Slate, supra; Buskirk v. Sanders,* 70 W. Va. 363, 73 S.E. 937 (1912). The traditional method of assigning *pro tanto* liability was to divide the judgment by the number of debtors who were liable on the judgment. *Cf. Hutcherson v. Slate, supra;* Prosser, *Law of Torts* §50 at 305-10 (4th ed. 1971).

Once a right of contribution was recognized between joint tortfeasors, courts and commentators[15] began to realize that a more equitable method of handling the right of contribution *inter se* would be to allocate it according to the degrees of fault attributable to each tortfeasor. This concept arose from the fact that in many cases involving joint tortfeasors, the tortfeasors were vastly unequal in their degrees of fault or negligence.[16]

---

[14] W. Va. Code, 55-7-13, provides:

"Where a judgment is rendered in an action ex delicto against several persons jointly, and satisfaction of such judgment is made by any one or more of such persons, the others shall be liable to contribution to the same extent as if the judgment were upon an action ex contractu."

[15] Davis, *Comparative Negligence, Comparative Contribution, and Equal Protection in the Trial and Settlement of Multiple Defendant Product Cases,* 10 Ind. L. Rev. 831 (1977); Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle v. Superior Court,* 30 Hastings L. J. 1465 (1979); Levy, *Pure Comparative Negligence: Set-Offs, Multiple Defendants and Loss Distribution,* 11 U. S. F. L. Rev. 405 (1977); McNichols, *Judicial Elimination of Joint and Several Liability Because of Comparative Negligence–A Puzzling Choice,* 32 Okla. L. Rev. 1 (1979); Walkowiak, *Innocent Injury and Loss Distribution: The Florida Pure Comparative Negligence System,* 5 Fla. St. U. L. Rev. 66, 78-93 (1977); Comment, *The Case for Comparative Contribution in Florida,* 30 U. Miami L. Rev. 713 (1976).

[16] The most frequently cited case standing for the proposition that comparative contribution among joint tortfeasors *inter se* is a fairer allocation of the burden of liability is *Bielski v. Schultze,* 16 Wis.2d 1, 114 N.W.2d 105 (1962). The court in *Bielski* found it could not justify maintaining a rule that commanded the joint tortfeasor who was only 5% causally negligent to pay 50% of the damages by way of reimbursement in contribution to his 95% negligent co-tortfeasor.

One of the catalysts for adopting a system of comparative contribution was the relaxation of the common law rule that a plaintiff's contributory negligence completely barred his recovery. With the adoption of comparative negligence statutes and case decisions allowing allocation of negligence between plaintiffs and defendants, the allocation of fault among joint tortfeasors seemed the next logical step.

Comparative contribution makes the right of contribution equatable to the degree of fault between each tortfeasor. This is in keeping with the trend toward reducing substantial artificiality or unfairness in tort law. A number of states by statute now base contribution on relative fault.[17] Several courts have independent of any legislation adopted a form of comparative contribution. *E.g., American Motorcycle Association v. Superior Court*, 20 Cal.3d 578, 146 Cal. Rptr. 182, 578 P.2d 899 (1978); *Skinner v. Reed-Prentice Division Package Machinery Co.*, 70 Ill.2d 1, 374 N.E.2d 437 (1977), *modified*, 70 Ill.2d 16 (1978); *Packard v. Whitten*, 274 A.2d 169 (Me. 1971); *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 367 (Minn. 1977); *Missouri Pacific Railroad Company v. Whitehead and Kales Company*, 566 S.W.2d 466 (Mo. 1978); *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972); *Bielski v. Schulze*, 16 Wis.2d 1, 114 N.W.2d 105 (1962).

Over the last twenty years there has been a noticeable trend in our tort decisions to ameliorate the rigidity of many common law rules. In the earlier portions of this opinion, we cited our cases which have lifted the bar of various common law immunity doctrines. In *Bradley* we alleviated the harshness of the doctrine of contributory negligence. In *Ratlief v. Yokum*, ___ W. Va. ___, 280

---

[17] *See*, Note, *Comparative Contribution: The Legislative Enactment of the Skinner Doctrine*, 14 John Marshall L. Rev. 173 (1980), which lists seventeen states as having statutorily adopted comparative contribution: Arkansas, Delaware, Florida, Hawaii, Illinois, Maine, Minnesota, Montana, New Jersey, Ohio, Oregon, Rhode Island, South Dakota, Texas, Utah, Wisconsin and Wyoming.

S.E.2d 584 (1981), we recognized that as a result of the doctrine of comparative contributory negligence, there was no need to continue the complex common law doctrine of last clear chance. Furthermore, in *Morningstar v. Black and Decker Manufacturing Company, supra,* we discussed at some length our historic role in developing the common law.

We have attempted not only substantively but procedurally to fashion a more equitable allocation of fault and its attendant liability in our tort law. Our seminal decision of *Haynes v. City of Nitro, supra,* recognized the right of a joint tortfeasor to bring in a fellow joint tortfeasor by way of a third-party complaint under Rule 14 of our Rules of Civil Procedure. The purpose of this rule was to modify the strict common law principle that prevented a right of contribution among joint tortfeasors before judgment. The old common law rule enabled the plaintiff to sue one of several joint tortfeasors and hold him responsible for the entire damage claim, even though other joint tortfeasors had contributed to the damages. Because the defendant had no right prior to *Haynes, supra,* to bring in by way of contribution another joint tortfeasor, he became liable for the entire judgment. The statute permitting contribution after judgment applied only to those who were joined on the judgment. W. Va. Code, 55-7-13.[18]

It must be stressed that *Bradley* did not deal with allocation of the primary negligence of the defendant joint tortfeasors *inter se. Bradley's* concern was in the area of the plaintiff's contributory negligence and modified the common law rule that any contributory negligence of the plaintiff barred his recovery. In *Bradley,* we adopted a rule of comparative contributory negligence allowing recovery to the plaintiff so long as the plaintiff's degree of contributory negligence did not equal or exceed that of the primary negligence of the other parties to the accident.

---

[18] *See* note 14, *supra.*

While it is true in *Bradley* we used the general term "comparative negligence," we made explicit in Syllabus Point 3 of *Bowman v. Barnes,* ___ W. Va. ___, 282 S.E.2d 613 (1981), that the plaintiff's contributory negligence was to be compared to all of the parties of the accident, not just the defendants involved in the litigation:

> "In order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascertained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants involved in the litigation."

Moreover, it is clear from *Bowman* that insofar as the plaintiff's contributory negligence is concerned, recovery is determined by comparing the plaintiff's degree of fault to that of all of the parties to the accident who are joint tortfeasors as a unit and not to each party on an individual basis.[19]

In neither *Haynes* nor *Bradley* did we discuss the question of whether the primary fault of the defendant joint tortfeasors should be allocated in accordance with their respective degrees of fault. However, the fundamental concepts of both *Haynes* and *Bradley* lead ineluctably

---

[19] A distinct minority of jurisdictions have construed their comparative negligence laws to mean that a plaintiff's contributory negligence is compared with an individual defendant's negligence. Thus, if the plaintiff is found to be 30% contributorily negligent and a defendant is found to be 20% at fault on primary negligence, the plaintiff cannot recover against this party. *Reiter v. Dyken,* 95 Wis.2d 461, 290 N.W.2d 510 (1980); *Board of County Commissioners v. Ridenour,* 623 P.2d 1174 (Wyo. 1981). This position is specifically rejected in the *Uniform Comparative Fault Act,* 12 U.L.A. (a) (1977). The better rule according to most courts and commentators is to compare the plaintiff's degree of contributory negligence to that of all parties to the accident as a unit and not as to each party on an individual basis. This is the "unit rule" or so-called Arkansas rule. *Watson v. Tull,* 234 Ark. 882, 356 N.W.2d 20 (1962); *Accord, Ridell v. Little,* 251 Ark. 568, 488 S.W.2d 34 (1972); *American Motorcycle Association v. Superior Court, supra; Skinner v. Reed-Prentice Division Package Machinery Co., supra; Graci v. Damon,* 374 N.E.2d 311 (Mass. App. 1978), *aff'd* 383 N.E.2d 842. *See generally* V. Schwartz, *Comparative Negligence* §16.6 (1978).

to this conclusion as they are both premised on making a more equitable adjustment of tort liability based on a party's degree of fault. In the earlier portions of this section, we have noted the historical development of these concepts. We, therefore, conclude that as between joint tortfeasors a right of comparative contribution exists *inter se* based upon their relative degrees of primary fault or negligence. By moderating the bar of contributory negligence for the plaintiff and permitting comparative contribution between joint tortfeasors, we have provided a reasonable balance of fairness for both plaintiffs and defendants.

Although only tangentially related to the certified question, we believe it is essential for future guidance of our trial courts to discuss some aspects of how the right of comparative contribution operates procedurally. First, the right of contribution established in *Haynes, supra,* is not mandatory but must be asserted by the defendant by filing a third-party claim. The right of comparative contribution is likewise not automatic. Because the right of comparative contribution is designed for the benefit of defendant joint tortfeasors, it can only be invoked by one of the joint tortfeasors in the litigation. The method for invoking the right of comparative contribution is be requesting that special interrogatories pursuant to Rule 49(b) of the West Virginia Rules of Civil Procedure be given to the jury requiring it to allocate the various joint tortfeasors' degree of primary fault. *See Packard v. Whitten, supra; Hill v. Okay Construction Co.,* 312 Minn. 324, 252 N.W.2d 107 (1977); H. Woods, *The Negligence Case: Comparative Fault* §18:1-3 (1978); V. Schwartz, *Comparative Negligence* §17:4 (1974). In the absence of such request, all joint tortfeasors, who are parties to the action and found to be liable to the plaintiff, will then share in the total judgment on a pro rata basis according to the number found liable.[20]

---

[20] This would be the same procedure that exists under W. Va. Code, 55-7-13, relating solely to contribution after judgment; whereas, *Haynes, supra,* and the case at hand relate to the right of comparative contribution before judgment.

It is apparent that in a third-party suit like the present case, if neither the orignial defendant nor the third-party defendant request special interrogatories on their comparative contribution, the verdict form given to the jury would inquire whether the jury finds the defendant and/or the third-party defendant liable to the plaintiff. If both the defendant and the third-party defendant are found liable, the plaintiff could only collect the judgment against the original defendant.[21] The original defendant (third-party plaintiff) would then collect 50% of the judgment as against the third-party defendant. Of course, where, as in the present case, a request was made for allocation of primary negligence, then the right of contribution will be based on the percent of fault so found.[22]

In the present case, the third-party defendant, Roberson, was not a co-defendant. Thus, insofar as the plaintiff is concerned, his entire judgment of $100,000 is collectible only against the defendant, Anchor. On the other hand, in the third-party action filed by Anchor against Roberson, the third-party defendant, was found to be 30% at fault. This means that Anchor is entitled to collect $30,000 from the third-party defendant Roberson.

### BRADLEY'S EFFECT ON CONTRIBUTION

We are asked whether Anchor which was found liable for 70% of the negligence, can pursue its third-party

---

[21] If the plaintiff timely amends his complaint to add the third-party defendant as a party defendant, the plaintiff would then be able to collect the judgment from either or both of the defendants. The liability of the defendants *inter se* would depend on whether one of them had asked the jury to find comparative contribution; if not, the two defendants would be equally liable.

[22] We recognize that there may be occasions when the jury has correctly arrived at the plaintiff's verdict including his degree of contributory negligence under *Bradley* and the amount of his damages but is confused on the comparative contribution issue. In this event, a trial court could in its discretion under the plaintiff's right of joint and several recovery enter a judgment in favor of the plaintiff without regard to comparative contribution and award a new trial to the defendants on this issue alone rather than awarding a new trial as to the entire case. *Caldwell v. Piggly-Wiggly Madison Co.*, 32 Wis.2d 477, 145 N.W.2d 745 (1966); V. Schwartz, *Comparative Negligence* §18.3 (1974).

action against Roberson who was found to be only 30% at fault. The answer is yes. Nothing in *Bradley* bears on the right of contribution. *Bradley* moderated the common law bar of contributory negligence so as to permit a plaintiff to recover his damages even though he was found to be partially contributorily negligent.

In the present case, Anchor is not pursuing a claim for its damages arising out of the accident as against the third-party defendant Roberson. Its position as a third-party plaintiff rests upon a claim for contribution against a joint tortfeasor under *Haynes, supra*. Essentially, Anchor seeks to allocate part of the primary negligence for the accident with a joint tortfeasor and therefore its contributory negligence under *Bradley* is not at issue. We stated in Syllabus Point 4, in part, of *Sydenstricker v. Unipunch Products, Inc., et al.*, ___ W. Va. ___, 288 S.E.2d 511 (1982):

> "The doctrine of contribution has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation."

Once comparative fault in regard to contribution is recognized, recovery can be had by one joint tortfeasor against another joint tortfeasor *inter se* regardless of their respective degree of fault so long as the one has paid more than his *pro tanto* share[23] to the plaintiff. In the present case, once Anchor pays the entire $100,000 award to the plaintiffs, it is entitled to collect on its $30,000 judgment against the third-party defendant, Roberson.

---

[23] The term *pro tanto* share has been previously discussed as to our former practice, where after judgment each judgment debtor's share *inter se* was determined by dividing the judgment by the number of debtors. In a tort action where, as here, the jury is asked in a comparative contribution context to assign a percentage of fault, this percentage of fault becomes for contribution purposes the *pro tanto* share of the judgment. Payment of more than an individual's assigned percentage of the judgment is payment of more than his *pro tanto* share and gives rise to his right in contribution to recover the excess.

## THE SET-OFF PROBLEM

Under the provisions of W. Va. Code, 55-7-6,[24] the jury may allocate the distribution of the wrongful death award to the beneficiaries. In this case, the jury awarded 75% of the damages to the deceased's son and 25% to the deceased's spouse, Mr. Roberson, who was the driver of the pick-up truck and the third-party defendant. As previously discussed, Mr. Roberson's negligence in the third-party action was set at 30%. The total award to the plaintiff was set at $100,000. Therefore, Mr. Roberson's share of the liability under comparative contribution would be $30,000. Anchor would like to "set-off" against the $25,000 it owes to Mr. Roberson (on the $100,000 jury award) the $30,000 for which he has been found liable to Anchor in the third-party action.

The question of the right of a defendant in a tort case to set-off a judgment he has obtained against the plaintiff on an opposite judgment the plaintiff has obtained against him when insurance is involved has been the subject of some commentary[25] and has been treated in two jurisdic-

---

[24] W. Va. Code, 55-7-6, provides in pertinent part:

"In any such action for wrongful death the jury may award such damages as to it may seem fair and just, and may direct in what proportion they shall be distributed to the surviving spouse and children, including adopted children and stepchildren, and grandchildren of the deceased, or if there be none such, then to the parents, brothers and sisters of the deceased, if there be none such, only then to such person or persons who were dependent upon the decedent for support."

We are not asked to consider the procedural aspects of damage allocation contained in W. Va. Code, 55-7-6 (1976). We do note however by the use of the term "may" such allocation is not mandatory.

[25] Fleming, *Foreward: Comparative Negligence at Last—By Judicial Choice*, 64 Cal. L. Rev. 239 (1976); Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court, supra* note 15; George & Walkowiak, *Blame and Reparation in Pure Comparative Negligence: The Multi-Party Action*, 8 Sw.U.L.Rev. 1 (1976); Levy, *Pure Comparative Negligence: Set-offs, Multiple Defendants and Loss Distribution, supra* note 15; Pearson, *Apportionment of Losses Under Comparative Fault Laws—An Analysis of the Alternatives, supra* note 11; Phillips, *The Case for Judicial*

tions. *Jess v. Herrmann*, 26 Cal.3d 131, 161 Cal. Rptr. 87, 604 P.2d 208 (1979); *Stuyvesant Insurance Company v. Bournazian*, 342 So.2d 471 (Fla. 1977). *See also Uniform Comparative Fault Act*, 12 U.L.A. §3 (1982 Cumm. Supp.). In both of these jurisdictions, the courts had previously adopted a pure comparative negligence rule. Both courts concluded that they would not permit a "set-off" where there was liability insurance coverage. Both courts reasoned that if a "set-off" were permitted on the judgments so that only a net judgment was payable, then the real beneficiaries of the "set-off" would be the parties' insurance carriers.[26] This benefit would be contrary to the contractual provisions of the ordinary liability insurance policy requiring the company to pay for damages incurred by its insured and would result in the injured parties receiving less money than the jury had awarded for their injuries.[27] Moreover, both courts indicated that to permit this windfall where insurance is involved would be contrary to the State's financial responsibility law requiring insurance coverage to provide financial protection for damages arising out of accidents.

We can accept these policy reasons advanced by the California and Florida Courts for disallowing set-offs on

---

*Adoption of Comparative Fault in South Carolina*, 32 S. C. L. Rev. 295 (1980).

[26] In the present case, the judgment "set-off" point is even more complex since the third-party defendant, Roberson, the husband of plaintiff's decedent, is not a named plaintiff in the wrongful death action. He is, however, a beneficiary to the extent of $25,000 out of the $100,000 judgment obtained in the wrongful death action awarded to him by the jury. This issue is not raised or briefed by the parties but for the limited purposes of this opinion we assume that Roberson has a judgment creditor status.

[27] Here, assuming adequate insurance if the set-off were permitted, Anchor's insurance carrier would pay $75,000 to the son on the $100,000 judgment. Its insurance carrier would be relieved of the $25,000 additional payment due to Roberson, the other beneficiary, since this would have been set-off by virtue of Anchor's $30,000 judgment against Roberson in the third-party action. Anchor would still have $5,000 unsatisfied on its $30,000 judgment against Roberson which it could collect against him or his insurance carrier. Moreover, Roberson's insurance carrier would be relieved of paying $25,000 of the $30,000 judgment that he owed to Anchor.

judgments in tort actions where there is underlying insurance coverage. Generally, parties may set-off on judgments obtained against each other. This rule is, however, not a matter of absolute right but subject to the court's discretion. 47 Am.Jur.2d *Judgments* §1003 (1969); 49 C.J.S. *Judgments* §566(c) (1947). In *Nuzum v. Morris,* 25 W. Va. 559, 566-67 (1885), we discussed this principle at some length:

> "In *Mitchell v. Oldfield,* [4 T. R. 123], it is said that the authority of the court to set off opposite judgments did not depend on the statutes of set off but on the general jurisdiction of the court over the suitors in it; that it was an equitable part of this jurisdiction and had been frequently exercised. The same doctrine is strongly and clearly announced in *Williams v. Evans,* 2 McCord, and in 3 Watts, in Tuck, Com's, and in Montague on Set-Off, [5, 6 and 7]. The courts have been gradually extending this equitable remedy. (*Barker v. Braham,* [2 Blackst. 896]); and opposite demands arising upon judgments may on motion be set off against each other, whenever such set-off is equitable, though the judgments are in different courts, and though all the parties to the different records are not the same. ... [A]ll applications of this kind, as they are founded on no positive statute or any fixed rule which compels the court to grant them, are addressed to the discretion of the court; ..."

*See also White v. Moss,* 88 W. Va. 1, 106 S.E. 72 (1921); *Faulconer v. Stinson,* 44 W. Va. 546, 29 S.E. 1101 (1898); *Payne v. Webb,* 29 W. Va. 627, 2 S.E. 330 (1887).

In view of the foregoing law, we conclude that there is no right of judgment set-off where in a tort case parties have obtained counter judgments against each other and both parties are fully covered by liability insurance as to such judgments. In the present case, we understand that both Anchor and Roberson have adequate liability insur-

ance and therefore no judgment set-off would be appropriate.[28]

The certified questions having been answered, this case is dismissed from the docket.

*Answered and dismissed.*

---

[28] Where there is insufficient insurance coverage or a total lack of coverage, a court may well in the exercise of its discretion permit some form of judgment set-off. One of the frequent reasons for allowing a judgment set-off is that one of the parties who has obtained a judgment and has a counter judgment against him is insolvent. It would be inequitable for him to collect on his judgment and pocket the money without paying the counter judgment. 47 Am.Jur.2d *Judgments* §1010 (1969).